**Matter of AUTOCUE SALES & DISTRIB-
UTING CORP., Bankrupt.**

United States District Court
S. D. New York.
March 29, 1957.

See, also, D.C., 148 F.Supp. 685.

George C. Levin, New York City, for receiver.

Levine, Rembar & Zolotar, New York City, for witness.

I. 11 U.S.C.A. § 69.

WEINFELD, District Judge.

This is a motion to adjudge Laurence H. Merchant in contempt[1] for refusal to answer material questions propounded to him during the course of a § 21, sub. a examination under the Bankruptcy Act[2] into the affairs of Autocue Sales & Distributing Corporation, bankrupt, of which he had been president, principal stockholder and a director. The petition also alleges failure to produce a contract between Telecue Corporation of New Jersey and Autocue Co., Inc.

The respondent, in answering the petition, in substance admits that contrary to the directions to the referee he has failed (1) to produce the contract; (2) to answer specific questions; and (3) to refresh his recollection concerning certain conversations had by him with respect to Telecue Corporation of New Jersey. His defense in substance is that none of the matters as to which he has refused to comply with the referee's directions have any relevance to the acts, conduct or property of the bankrupt.

In elaboration of his defense the respondent asserts that Autocue Co., Inc., is a corporation entirely separate and distinct from the bankrupt, which had been engaged in business prior to the commencement of business by the bankrupt and is still engaged in business; that after the adjudication of the bankrupt he resigned as its president and was then employed by Telecue Corporation of New Jersey as its sales director; that the contract between Telecue Corporation of New Jersey and Autocue Co., Inc., was executed after the adjudication of the bankrupt and has no relation to the acts, conduct, or property of the bankrupt; that two of the petitioning creditors herein and others entered into a conspiracy to destroy the business of the bankrupt; that the instant involuntary petition was an overt act in the conspiracy; that despite this knowledge the receiver retained as his attorney the attorney for the petitioning creditors who are members of the conspiracy; that the

2. 11 U.S.C.A. § 44, sub. a.

purpose of the receiver's counsel in propounding the questions and demanding the production of the contract is to gain information of value to a corporation organized by the alleged conspirators to complete with the bankrupt and destroy its business.

In view of the serious charges made in the answer to the petition, although alleged upon information and belief, I have reviewed the entire transcript of the testimony given by all witnesses upon the § 21, sub. a examination.

■■■ The question presented by the witness' refusal to comply with the referee's direction must be viewed against the dominant purpose of § 21, sub. a of the Bankruptcy Act, which authorizes examinations concerning the "acts, conduct, or property of a bankrupt". In essence it is in the nature of a discovery proceeding and provides a means of thorough investigation calculated to lead to the discovery and the recovery of a bankrupt's assets. The relevancy of the questions propounded during the course of the inquiry is to be determined, not by the standard applied upon a trial of the issues, but by the broader test of relevancy of the subject matter—the same test applied under amended Rule 26 of the Federal Rules of Civil Procedure, 28 U.S.C.A.[3] Of necessity, such an inquiry must be carried on in an atmosphere which permits great leeway and scope of questions. Diversion of assets may take many forms; it may at times be open and notorious; on occasions it may be subtle and covert. In the latter case, if results beneficial to a bankrupt are to be achieved, obviously wide latitude of inquiry must be the rule. Our Court of Appeals has "recognized that the trustee may inquire at large and without limit except in cases of plain abuse, to be determined in the court's discretion."[4] Indeed, it has

been recognized that the examination may, in the search for information as to assets, even partake of the nature of a fishing expedition.[5] And neither is it an objection that its purpose may be to obtain information or leads to prosecute an action against the witness.[6] Frequently, particularly where former officers of a bankrupt have shifted their activities to, and are engaged by, other corporations in the same business as a bankrupt and which appear to have become possessed of some of the assets of the bankrupt, the examination of necessity may be exploratory and groping.[7]

Here the bankrupt corporation had been engaged in the business of providing equipment and personnel to cue and prompt television shows. The testimony taken upon the § 21, sub. a examination indicates that up to the filing of the involuntary petition it had a substantial number of television accounts which it serviced; that prior to the formation of the bankrupt the witness had also been instrumental in organizing other companies engaged in the same and related businesses; that these included a Telecue Sales Co., Inc., which ceased functioning in 1953 and which was succeeded by Autocue Co., Inc. The latter company during the period the bankrupt was in active business appears to have been dormant (although the witness now claims otherwise). Subsequent to the adjudication of the bankrupt still another corporation, Telecue Corporation of New Jersey, was formed, of which the witness became "director of sales". This company, if the evidence be accepted, has taken over the servicing of a substantial number of the bankrupt's former accounts. Telecue Corporation of New Jersey entered into a contractual relationship with Autocue Co., Inc., of which the witness was then president and director. It is this agreement which he has refused to produce. It, and the

3. Marx v. Chase Nat. Bank, 2 Cir., 117 F. 2d 800; Cf. Kaiser-Frazer Corp. v. Otis & Co., D.C.S.D.N.Y., 11 F.R.D. 50, 53.

4. Marx v. Chase Nat. Bank, 2 Cir., 117 F.2d 800, 801.

5. In re Foerst, D.C.S.D.N.Y., 93 F. 190.

6. See, In re Paramount Publix Corp., 2 Cir., 82 F.2d 230, 233.

7. Cf. Sachs v. Hadden, 2 Cir., 173 F.2d 929.

questions which he has declined to answer, relate to the supply of personnel formerly employed by the bankrupt for the operation of cuing and prompting, and particularly the servicing of former accounts of the bankrupt.

 The foregoing situation suggests there may be some basis for the assertion of a claim by the trustee of the bankrupt estate that corporate opportunities belonging to the bankrupt had been diverted to Autocue Co., Inc., or Telecue Corporation of New Jersey, either separately or jointly; it also suggests a basis for a cause of action for inducing a breach of contract. Cf. Hornstein v. Podwitz, 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1. Further, the charge is made that one of these companies without authority or adequate payment acquired the good will of the bankrupt which it is asserted was of considerable value. This is not to say that the facts as eventually developed will support the potential claims, or the charges; but enough has been revealed by the testimony thus far adduced to establish that the questions are germane to the rights and property of the bankrupt and may furnish evidence leading to the recovery of corporate assets or sufficient upon which to attempt in good faith to secure redress of corporate rights. In any event, the witness' relationship to (1) the bankrupt as its chief executive officer and stockholder, (2) Autocue Co., Inc., as its president and director, (3) Telecue Corporation of New Jersey as director of sales, which appears to have supplanted the bankrupt and taken over accounts previously serviced by it, is such that it cannot be said that the information sought of him does not concern "the acts, conduct and property of the bankrupt". Under the circumstances, it is to be expected that the inquiry will be of an exploratory nature so that all the facts may be disgorged for the benefit of the estate.

The referee was justified in directing the witness to answer and he hereby is directed to answer all questions (except the second question on page 129), upon the resumption of the § 21, sub. a hearing, the date of which shall be fixed in the order, and in the event of failure to comply, he shall be adjudged in contempt.

Settle order on notice.