**In re GHR ENERGY CORP., f/k/a Good Hope Refineries, Inc., GHR Companies, Inc., f/k/a Good Hope Industries, Inc., GHR Pipeline, Inc., f/k/a Southern Pipeline Corp., Southern States, Inc., Southern States Exploration, Inc., Laredo Exploration, Inc., and Southern Petroleum Trading Co., Ltd., Debtors.**

**Bankruptcy Nos. 4–83–00056–G, 4–83–00060–G, 4–83–00092–G to 4–83–00095–G and 4–83–00136–G.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 26, 1983.

---

**5.** *Id.*

Stephen Gordon, Boston, Mass., for debtor Good Hope Energy Corp.

Andrew Griesinger, Robert M. Gargill, Boston, Mass., for debtors' secured bank creditors Continental Illinois Nat. Bank & Trust Co. of Chicago.

Sumner Darman, Boston, Mass., Creditors' Committee GHR Companies.

Joseph Braunstein, Boston, Mass., Creditors Committee GHR Energy.

Van Oliver, Dallas, Tex., Creditors Committee remaining cases, Energy.

Gerrard Kelley, Asst. U.S. Trustee, Boston, Mass.

## MEMORANDUM AND ORDER ON DEBTORS' MOTION FOR EXAMINATION

PAUL W. GLENNON, Bankruptcy Judge.

The above-captioned debtors ("debtors") filed a motion for a Rule 2004 examination of James W. Glanville ("Glanville"), general partner, Lazard Freres & Co., New York, New York. The motion failed to set forth Glanville's relationship with the debtors. It was not until the Court received the objection of Continental Illinois National Bank and Trust Company of Chicago, acting as agent for the debtors' secured bank creditors, ("banks") that the Court became informed of Glanville's role in these reorganization proceedings. To wit: Glanville was hired by the law firm of Wachtell, Lipton, Rosen & Katz (co-special counsel to the banks) to analyze the financial feasibility of converting a visbreaker to a delayed coker. This employment was entered into in anticipation of the debtors' seeking the Court's approval to expend funds to convert the visbreaker. It was also agreed that Lazard Freres & Co. would be available to testify at any hearing on such an application if so requested by the banks. To date, the Court has not been requested to approve such an expenditure.

The banks allege that Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure prohibits the debtors from examining Glanville unless exceptional circumstances are

shown.[1] Further, the banks allege this is a contested matter which, under Bankruptcy Rule 9014, makes Rule 26(b)(4)(B) applicable.[2] Bankruptcy Rule 2004 provides, in relevant part:

(a) EXAMINATION ON MOTION. On motion of any party in interest, the court may order the examination of any person.

(b) SCOPE OF EXAMINATION. The examination of any person under this rule ... may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In ... a reorganization case under chapter 11 of the Code, the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, any any other matter relevant to the case or to the formulation of a plan.[3]

It is clear that the scope of a Rule 2004 examination is unfettered and broad. "In general, a large latitude of inquiry should be allowed in the examination of persons closely connected with the bankrupt in business dealings, or otherwise, for the purpose of discovering assets and unearthing frauds, upon any reasonable surmise that they have assets of the debtor .... The examination ... is of necessity to a considerable extent a fishing expedition." *In re Foerst,* 93 F. 190, 191 (S.D.N.Y.1899). It may be "exploratory and groping". *Sachs v. Hadden,* 173 F.2d 929, 931 (2d Cir.1949). "[T]he breadth of the language employed in the Rules so all encompassing as semantically to include and encourage harassment on every human subject." *In re Georgetown of Kettering,*

1. Rule 26(b)(4)(B) provides:
   Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:
   (B) A party may discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

2. The Advisory Committee Note to Bankruptcy Rule 9014 reads:
   Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter. Even when an objection is not formally required, there may be a dispute. If a party in interest opposes the amount of compensation sought by a professional, there is a dispute which is a contested matter.
   Whether this in fact is a contested matter or is made one solely by the bank's objection is irrelevant to the outcome of my decision.

3. Bankruptcy Rule 2004 is derived from former Bankruptcy Rules 205 and 11–26. Under Rule 205(d), the scope of examination was limited to "the acts, conduct, or property of the bankrupt, or to any matter which may affect the administration of the bankrupt's estate or to his right to discharge." Bankruptcy Rule 11–26 provided: "Bankruptcy Rule 205 applies in Chapter XI cases, except that the scope of examination referred to in subdivision (d) thereof may also relate to the liabilities and financial condition of the debtor, the operation of his business and the desirability of the continuance thereof, the source of any money or property acquired or to be acquired by the debtor for purposes of consummating a plan and the consideration given or offered therefor, and any other matter relevant to the case or to the formulation of a plan." These rules were in turn, adopted from § 21a of the Bankruptcy Act which provided: "The court may, upon application of any officer, bankrupt, or creditor, by order require any designated persons, including the bankrupt and his or her spouse, to appear before the court or before the judge of any State court, to be examined concerning the acts, conduct, or property of a bankrupt ...", and § 7(a)(10) of the Bankruptcy Act which provided: "The bankrupt shall ... submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge ...."

17 B.R. 73, 75, 8 B.C.C. 934, 935 (Bkrtcy.S.D. Ohio 1981).

The filing of a petition in bankruptcy creates an estate, the administration of which is subject to policing by the bankruptcy court with all its attendant rules of procedure and substantive law. In many ways, the rights of parties who dealt with the debtor prior to the date the petition was filed are altered by the filing of the petition. However unfair this may seem, I suppose all businessmen must be aware that any deals entered into today may be modified by the subsequent financial demise of the other party. The broad scope of a Rule 2004 examination is merely one of the peculiar characteristics of bankruptcy law and procedure. Just as, *e.g.*, payments to creditors within ninety days of the filing of a petition are subject to being voided, creditors are stayed from continuing foreclosure actions begun prior to the filing, and certain pre-petition liens may be avoided, after the filing of a petition, any person may be examined relative to the "acts, conduct, or property" etc. of the debtors on a wide variety of topics.

That Rule 2004 offers few of the procedural safeguards provided by Rule 26 is clear. The motion "may be heard *ex parte* or it may be heard on notice". Advisory Committee Note to Rule 2004.

> [P]rocedural safeguards of witnesses are at a minimum. There is no requirement in Section 21a or in Rule 205 that notice be given of the . . . application for an examination, either to the bankrupt, . . . or to the witness, . . . although, to be sure, either may object by a motion to vacate the order, but after the fact. The witness is not afforded the right to be represented by counsel at the examination; rather, counsel's attendance is in the discretion of the court, . . . . "The right to counsel shall be permitted sparingly and with caution." The right to object to improper and unfair questions in the course of the examination has usually been denied, . . . and finally, there is discretion in the court, assuming counsel is permitted at all, to allow right to "cross examine" the witness. . . .

In sharp contrast with the singular purpose of the Rule 205 examination as a powerful aid to the trustee in his expeditious administration of the bankrupt's estate, the orchestration of the chorus of discovery instruments under the Federal Rules, was to satisfy a long felt need for a legal tool to be used by Federal Courts to supplement the pleadings, to define issues and to expedite trial of lawsuits. Discovery was thought necessary in order that the real points of dispute between the parties would become evident as the facts begin to unfold before trial. . . . *Mutual* knowledge of all relevant facts, gathered by both parties, is necessary for proper litigation, and, using the Federal Rules, either party may compel the other to disclose evidence in his possession. To this end, reasonable notice in writing must be given to every other party to the action, of the intention to depose any person; that notice is to state the time and place of the examination under Rule 30(b). There is a right to have counsel present, all objections must be noted, cross examination is permitted and should the examination be conducted in bad faith, or in such manner as to annoy, harass or embarrass the deponent or party, the court may intercede. Rule 30(c).

> While at first glance, the parallel "discovery" procedures, as with identical twins, seem to resemble each other, they are much different. This court, aware of the tension between them, cannot treat them as interchangeable (citations omitted).

*In re Dupont Walston, Inc.*, 4 B.C.D. 61, 63 (Bankr.S.D.N.Y.1978) (in that case, where the trustee had waited over four years to bring suit, the court ruled that the information desired must first be sought by way of the discovery mechanisms of the Federal Rules of Civil Procedure and *then*, if sufficient information was not produced, the trustee could return to the court and seek permission to conduct a Rule 205 examination).

The discovery safeguards of Rule 26 are intended to promote something other

than the aims of a Rule 2004 examination. The reason for enacting Rule 26(b)(4)(B) was to prevent "unfairness" which would result if one party gained information possessed by an expert hired and paid for by an opposing party. *Pearl Brewing Co. v. Jos. Schlitz Brewing Co.,* 415 F.Supp. 1122 (S.D.Tex.1976). "The basic premise of the doctrine therefore is that permitting discovery of experts is unfair inasmuch as it is the equivalent of taking another's property without proper compensation. There is the additional danger, beyond any consideration of proper compensation, that such discovery would afford the opportunity to take unwarranted advantage of an adversary's trial preparation" (citations omitted). *Id.* at 1138.[4] It cannot be disputed, that these Rules were enacted with different goals in mind. Therefore, to apply the standards of Rule 26(b)(4)(B) to a Rule 2004 examination would be inequitable, and, in fact, be without foundation. In the proper circumstances, an expert otherwise not subject to discovery because of Rule 26(b)(4)(B) would nonetheless be so under Rule 2004.[5]

Additionally, it may well be that Rule 26 would not preclude the debtors from taking discovery of Glanville. The Advisory Committee Note (on the 1979 amendments to Federal Rules of Civil Procedure) states that Rule 26(b)(4)(B) "precludes discovery against experts who were *informally consulted* in preparation for trial, *but not retained or specially employed* . . . . Subdivision (b)(4)(B) deals with an expert . . . who is *not expected* to be called as a witness" (emphasis supplied). *See, e.g., Ager v. Jane C. Stormont Hospital and Training School for Nurses,* 622 F.2d 496 (10th Cir.1980) and Rule 26(b)(4)(A). But this need not be decided now.

For other reasons, I believe the debtors may not examine Glanville. A Rule 2004 examination is not intended to provide the *debtors* unlimited access to the internal affairs of its creditors and those employed by its creditors. While it is true, in some instances, that creditors may possess information relative to the debtor's business and conduct which the debtors do not possess, this would be the exception. It cannot be said that Glanville has any such information, and in fact the debtors have not argued this. As stated by my colleague, Judge Harold Lavien, sitting for me in the *Good Hope Refineries, Inc.* case,

> [t]here may . . . be a question as to whether Rule 205 was ever intended for a Chapter XI debtor who, whatever other problems may exist, unlike the Trustee [is] not in need of a quick factual fix relative to the estate, its existence and location.

9 B.R. 421, 423 (Bkrtcy.D.Mass.1981).

In accordance with the foregoing, the motion for examination of James W. Glanville pursuant to Bankruptcy Rule 2004 is DENIED.

SO ORDERED.

---

**4.** In this connection, Rule 26(b)(4)(C) provides that the Court require the party seeking discovery pay the fees and expenses of the expert.

The Court of course also recognizes the coexisting aim of Rule 26(b)(4)(B) which is to ease the job of the trier of fact by enabling parties to litigation to present a cogent case. *See Weiss v. Chrysler Motors Corporation,* 515 F.2d 449 (2d Cir.1975).

**5.** I am not making a finding as to whether the relevancy standard contained in the general discovery provisions of the Federal Rules of Civil Procedure apply. Cases which answer this question in the affirmative include: *Freeman v. Seligson,* 405 F.2d 1326 (D.C.Cir.1968); *In re Autocue Sales & Distributing Corp.,* 151 F.Supp. 798 (S.D.N.Y.1957); and *In re Clearview Concrete Products,* 23 C.B.C. 373 (Bankr. E.D.N.Y.1980). *But see In re Frigitemp Corp.,* 15 B.R. 263 (Bkrtcy.S.D.N.Y.1981).