In re The **BENNETT FUNDING GROUP, INC.,** Bennett Receivables Corporation, Bennett Receivables Corporation II, Bennett Management & Development Corporation, Debtors.

**Bankruptcy Nos. 96–61376 to 96–61379.**

United States Bankruptcy Court,
N.D. New York.

Oct. 11, 1996.

Helmer, Johnson & Misiaszek (Grant E. Johnson, of counsel), Utica, NY, for Gwen Bennett.

Simpson, Thacher & Bartlett (George Newcombe, of counsel), New York City, for Trustee Breeden.

Wasserman, Jurista & Stolz (Harry Gutfleish, of counsel), Millburn, NJ, for Unsecured Creditors Committee.

## MEMORANDUM–DECISION, FINDINGS OF FACT CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is an application on behalf of third-party defendants Gwen Bennett ("G. Bennett"), Comfort Associates, Inc. ("CAI"), Comfort Financial Associates ("CFA"), and Bennett Financial Associates ("BFA"), brought on by an Order to Show Cause dated August 5, 1996, requiring the Trustee appointed pursuant to § 1104 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"), Richard C. Breeden ("Trustee"), to show cause why he should not be required to proceed under the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") regarding any discovery of the aforementioned parties, as well as why an examination under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") is appropriate as to a third party who is also a party to the adversary proceeding. The Court heard oral argument at a regular motion term in these proceedings on August 8, 1996, in Utica, New York. The parties were given an opportunity to file memoranda of law, and the matter was submitted for decision on August 22, 1996.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this matter pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(1) and (b)(2)(A).

### FACTS

On March 29, 1996, the Bennett Funding Group, Inc. ("BFG"), Bennett Receivables Corporation ("BRC"), Bennett Receivables Corporation II ("BRC–II") and Bennett Management and Development Corporation ("BMDC") filed voluntary chapter 11 petitions (collectively, the "Initial Debtors"), which are being jointly administered. Thereafter, on April 18, 1996, the Court approved the appointment of the Trustee.

On May 13, 1996, the Trustee filed an Application for an Order to Show Cause requesting authorization to conduct Fed. R.Bankr.P. 2004 examinations of certain individuals and entities, including G. Bennett. The Court orally granted the Trustee's request on May 23, 1996, and thereafter signed an Order, dated June 7, 1996, authorizing the Trustee to conduct examinations pursuant to Fed.R.Bankr.P. 2004 of the individuals and entities listed in Exhibit "A" of the Application. The Order directed the listed individuals and entities, upon request, to produce any documents and to provide testimony relating to the acts, conduct, assets, liability and financial condition of the Initial Debtors and any other matter relevant to the administration of these cases.

On June 6, 1996, the Trustee commenced an adversary proceeding against numerous defendants, including G. Bennett, her husband Patrick Bennett, CFA, CAI, and BFA. The Trustee alleges in the First Amended Adversary Proceeding Complaint ("Amended Complaint"), dated August 29, 1996, *inter alia*, that Patrick Bennett diverted in excess of $8.5 million from BMDC to CFA, CAI, and/or BFA, to pay for the construction of the Comfort Suites Hotel at Vernon Downs Racetrack for the benefit of himself and G. Bennett. *See* Amended Complaint, at ¶¶ 15, 78. Other allegations in the Amended Complaint include the assertion that Patrick Bennett's purchase of the Vernon Downs Racetrack was made possible through the use of funds diverted from BMDC, which were used to acquire a controlling interest in Mid–State Raceway, Inc., the alleged owner of Vernon Downs Racetrack (*see* Amended Complaint, at ¶¶ 74–77). Also alleged is: that BFA is owned by Patrick and G. Bennett, and that this entity was at times a partner in Bennett Finance Group III and Bennett Finance Group IV (Amended Complaint, at ¶ 16); that CFA, owned and controlled by Patrick and G. Bennett, is also known as BFA (Amended Complaint, at ¶ 28); that CAI, owned by Patrick Bennett, was formerly known as Bennett Associates, Inc. (Amended

Complaint, at ¶ 29); and that various entities received funding from BMDC (*see* Amended Complaint, at ¶¶ 16, 19, 21, 22, 27, 30). The significance of this partial list of interlocking relationships will become apparent in the following Discussion

█ The Trustee served a subpoena for a Fed.R.Bankr.P. 2004 examination of G. Bennett, dated July 30, 1996, and three other subpoenas on BFA, CAI, and CFA, dated July 31, 1996, all issued in care of G. Bennett. The Court subsequently signed an Order to Show Cause dated August 5, 1996, requiring the Trustee to show cause why he should not proceed with G. Bennett, BFA, CAI and CFA discovery pursuant to the Fed.R.Civ.P., and why a Fed.R.Bankr.P. 2004 examination is appropriate.[1] The Court heard oral argument on August 8, 1996, and allowed the parties to submit memoranda of law on the issues presented.

### ARGUMENTS

G. Bennett[2] asserts that once an adversary proceeding has been initiated, discovery in furtherance of that litigation is properly obtained through the use of provisions of the Fed.R.Civ.P., and not Rule 2004 of the Fed.R.Bankr.P. G. Bennett further contends that Fed.R.Bankr.P. 2004 examinations of third parties are appropriate only when the party has knowledge of the debtor's conduct or financial affairs that relate to the bankruptcy proceeding, and that this discovery device is not properly employed to investigate a non-debtor's private business affairs. Based on this, G. Bennett argues that discov-

ery of third parties must be accomplished under the Fed.R.Civ.P.

The Trustee counters that the filing of the adversary proceeding against an individual is not an automatic bar to the use of a Fed.R.Bankr.P. 2004 examination. More specifically, the Trustee argues that a Fed.R.Bankr.P. 2004 examination should be permitted of parties to the adversary proceeding in order to examine matters which are outside of and not pled in the pending adversary proceeding. The Trustee represents that he will not inquire into the Comfort Suites Hotel transaction, which allegedly is the only claim against G. Bennett in the adversary proceeding. Instead, for example, the Trustee wants to explore the alleged diversion of BMDC monies to acquire shares in Mid–State Raceway, Inc., which were then transferred to a company owned by G. Bennett. In addition, the Trustee wants to explore the source of assets received or owned by G. Bennett in an effort to determine the extent to which Debtor assets were transferred to her. As further stated by the Trustee, the breadth of inquiry under Fed.R.Bankr.P. 2004 is necessary to assist in the discovery of hidden assets and to fully ascertain the extent of the estate.

### DISCUSSION

█ Fed.R.Bankr.P. 2004(a) allows the court, upon motion of any party in interest or upon an *ex-parte* basis, to order the examination of any entity. The examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of

---

1. While G. Bennett's motion references the Fed.R.Civ.P., those procedural rules have no application to proceedings before this Court except to the extent that they are incorporated by reference in the Fed.R.Bankr.P. *See* Fed.R.Bankr.P. 1001. Thus, while the Court references the Fed.R.Civ.P. in this decision, it does so only to the extent that the Fed.R.Civ.P. are referenced in the Fed.R.Bankr.P.

2. The Court notes that while the four subpoenas issued identify G. Bennett and BFA, CFA, and CAI (in care of G. Bennett) as subjects of Rule 2004 examinations, the Trustee appears to restrict his discussion of the issues presented as they would apply to an examination solely of G. Bennett. *See* Trustee's Memorandum of Law, dated August 6, 1996, and Supplemental Memo-

randum of Law, dated August 21, 1996. Counsel for G. Bennett similarly seems to eliminate parties in his memoranda of law. While Mr. Misiaszek states in his Affidavit dated August 2, 1996, that he represents G. Bennett and may represent BFA, CFA and CAI, his firm's memorandum of law indicates that they are attorneys for G. Bennett and CAI only. *See* Memorandum of Law in Support of Defendant, Gwen Bennett's Order to Show Cause, dated August 21, 1996. The Court was not provided with any information. by the parties which would explain this apparent inconsistency. Therefore, references to "Mrs. Bennett" herein will refer to Mrs. Bennett in her personal capacity and in her capacity as she is associated with the entities listed in the subpoenas.

the debtor, or to any other matter which may affect the administration of the debtor's estate, or to the debtor's right to discharge." Fed.R.Bankr.P. 2004(b). Third parties are also subject to examination under this rule if they possess knowledge of the debtor's acts, conduct or financial affairs which relate to the bankruptcy proceeding. *In re Dinubilo,* 177 B.R. 932, 940 (E.D.Cal.1993); *In re Ecam Publications, Inc.,* 131 B.R. 556, 559 (Bankr.S.D.N.Y.1991). The scope of this examination is admittedly "unfettered and broad" (*see In re GHR Energy Corp.,* 33 B.R. 451, 453 (Bankr.D.Mass.1983)), and indeed is commonly recognized as more in the nature of a "fishing expedition." *In re Wilcher,* 56 B.R. 428, 433 (Bankr.N.D.Ill.1985). The purpose of such a broad discovery tool is to assist the trustee in revealing the nature and extent of the estate, and to discover assets of the debtor which may have been intentionally or unintentionally concealed. *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702, 708 (Bankr.S.D.N.Y.1991); *In re Valley Forge Plaza Assocs.,* 109 B.R. 669, 674 (Bankr.E.D.Pa.1990). It is properly used as a pre-litigation device to determine whether there are grounds to bring an action to determine a debtor's right to discharge or the dischargeability of a particular debt. *Sweetland v. Szadkowski (In re Szadkowski),* 198 B.R. 140, 141 (Bankr.D.Md.1996).

■ While Fed.R.Bankr.P. 2004 is the basic discovery device used in bankruptcy cases (*see In re French,* 145 B.R. 991, 992 (Bankr.D.S.D.1992)), its application is not without bounds. In fact, the issue before this Court regarding the scope and propriety of an examination pursuant to Fed.R.Bankr.P. 2004 in the shadow of a pending adversary proceeding has been the subject of much judicial discussion and "line drawing." [3] While Fed.R.Bankr.P. 2004 seems straightforward, caselaw interpreting it has established certain distinctions to be noted in its application. An important distinction is

when the discovery provisions of the Fed. R.Civ.P., as incorporated by reference into the Fed.R.Bankr.P., must be used rather than the more liberal Fed.R.Bankr.P. 2004. As Fed.R.Bankr.P. 2004 is meant to give the inquiring party broad power to investigate the estate, it does not provide the procedural safeguards offered by Fed.R.Bankr.P. 7026. *In re Bakalis,* 199 B.R. 443, 447–48 (Bankr. E.D.N.Y.1996); *Dinubilo,* 177 B.R. at 939. For example, under a Fed.R.Bankr.P. 2004 examination, a witness has no general right to representation by counsel, and the right to object to immaterial or improper questions is limited. *Dinubilo,* 177 B.R. at 939–40; *French,* 145 B.R. at 992; *see also GHR Energy,* 33 B.R. at 454.

■ The well recognized rule is that once an adversary proceeding or contested matter has been commenced, discovery is made pursuant to the Fed.R.Bankr.P. 7026 *et seq.,* rather than by a Fed.R.Bankr.P. 2004 examination. *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.),* 127 B.R. 267, 274 (D.Colo.1991) (citing *Valley Forge,* 109 B.R. at 674–75); *see also Bakalis,* 199 B.R. at 447–48 (same); *Ecam Publications,* 131 B.R. at 559 (same); *First Financial Sav. Assoc. v. Kipp (In re Kipp),* 86 B.R. 490, 491 (Bankr.W.D.Tex.1988) (stating that discovery devices in Rules 7026–7037 of Fed. R.Bankr.P. apply after adversary proceeding has been initiated). In addition, courts are wary of attempts to utilize Fed.R.Bankr.P. 2004 to avoid the restrictions of the Fed. R.Civ.P. in the context of adversary proceedings. *Valley Forge,* 109 B.R. at 675; *see also Blinder, Robinson,* 127 B.R. at 274 (quoting *Valley Forge* ); *GHR Energy,* 33 B.R. at 455.

■ The general rule regarding the restrictions on the use of Fed.R.Bankr.P. 2004 paints with a broad brush, and it is necessary to examine the distinctions that courts have made in its application. As indicated in

---

3. *See, e.g., Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.),* 127 B.R. 267 (D.Colo.1991); *Sweetland v. Szadkowski (In re Szadkowski),* 198 B.R. 140 (Bankr.D.Md.1996); *In re M4 Enters., Inc.,* 190 B.R. 471 (Bankr. N.D.Ga.1995); *In re Buick,* 174 B.R. 299 (Bankr. D.Colo.1994); *In re Towers Financial Corp.,* 164 B.R. 719 (S.D.N.Y.1994); *In re Ecam Publica-*

*tions, Inc.,* 131 B.R. 556 (Bankr.S.D.N.Y.1991); *In re Drexel Burnham Lambert Group, Inc.,* 123 B.R. 702 (Bankr.S.D.N.Y.1991); *In re Sun Medical Management, Inc.,* 104 B.R. 522 (Bankr. M.D.Ga.1989); *First Financial Sav. Assoc. v. Kipp (In re Kipp),* 86 B.R. 490 (Bankr.W.D.Tex. 1988).

*Blinder, Robinson,* those entities which are not affected by the adversary proceeding should not be able to avoid an examination under Fed.R.Bankr.P. 2004. *Blinder, Robinson,* 127 B.R. at 275. To rule otherwise would mean that a trustee would be precluded from using the Rule as to *all* entities once an adversary proceeding has been commenced. *See id.* Stated more clearly, "even after the trustee has commenced an adversary proceeding(s), the trustee may conduct Rule 2004 examinations of entities which are not parties to or are not affected by the pending adversary proceeding(s)." *In re Buick,* 174 B.R. 299, 305 (Bankr.D.Colo. 1994). This is because entities not affected by the pending adversary proceeding do not need the additional protection afforded by the Fed.R.Bankr.P. 7026 *et seq. Blinder, Robinson,* 127 B.R. at 275. Discovery of evidence *related* to the pending proceeding must be accomplished in accord with more restrictive provisions of Fed.R.Bankr.P., *See Szadkowski,* 198 B.R. at 142; *In re M4 Enters., Inc.,* 190 B.R. 471, 475 (Bankr.N.D.Ga. 1995), while *unrelated* discovery should not be subject to those rules simply because there is an adversary proceeding pending. *See M4 Enters.,* 190 B.R. at 475 n. 4. Thus a trustee, like a creditor, must look to Fed. R.Bankr.P. 7026 *et seq.* after an adversary proceeding is commenced for discovery as to both entities affected by the proceeding and issues addressed in the proceeding. *See Buick,* 174 B.R. at 306.

■ The Trustee in the case at bar seeks a Fed.R.Bankr.P. 2004 examination of G. Bennett, and according to the 2004 subpoena issued to her, the Trustee has requested, *inter alia,* documents relating to her net worth, brokerage accounts, tax returns, bank accounts and ownership of real property, as well as documents relating to transfers of any funds, assets and real property that either she or her children have received from Bennett Funding Group ("BFG") or the Bennett Management and Development Corporation ("BMDC"). In addition, the Trustee has requested information and documents pertaining to "Bennett Financial Associates ('BFA'), Comfort Financial Associates ('CFA'), Comfort Associates, Inc. ('CAI'), Mid–State Raceway, Inc. ('Mid–State'), the Comfort Suites Hotel, Standardbred Enterprises, Ltd. ('Standardbred') and/or High Mountain Associates ('High Mountain')." *See* Trustee's Subpoena for Rule 2004 Examination,.dated July 31, 1996, at 3–5.

Despite the clear wording of the subpoena, the Trustee states in his memorandum of law that he does not seek discovery on matters pled in the Adversary Complaint, which includes allegations of the diversion of funds from BMDC to pay for the construction of the Comfort Suites Hotel for the benefit of Bennett. *See* Trustee's Supplemental Memorandum of Law in Opposition to Application and Order to Show Cause of Gwen Bennett, dated August 21, 1996, at 15. It is difficult to see how information demanded in the subpoena would not relate to matters in the Amended Complaint. Furthermore, G. Bennett is described in the Amended Complaint as a defendant and "the wife of defendant Patrick Bennett and a partner with Patrick Bennett in Comfort Financial Associates ('CFA'), also known as Bennett Financial Associates ('BFA')," while BFA is alleged to be owned and controlled by G. Bennett and Patrick Bennett. BFA is further alleged to have been a partner in other entities controlled by Patrick Bennett, including Bennett Finance Group III and Bennett Finance Group IV, and to have received funding from BFG and BMDC. See Amended Complaint, at 7–8. The Trustee's argument that his examination of G. Bennett pursuant to Fed. R.Bankr.P. 2004 should be allowed because it will not examine matters relating to the Comfort Suites Hotel transaction, which the Trustee submits is the only basis for the allegations against her in the adversary proceeding, ignores the likelihood that information elicited will relate directly to issues and parties already named in the adversary proceeding.

After review of the ninety-seven page Amended Complaint, it is clear that the Trustee has alleged the creation by the defendants of what can rightfully be described as a financial superweb. As such it is difficult at this point, if not impossible, to determine whether and to what extent information

gleaned from a Fed.R.Bankr.P. 2004 examination of G. Bennett will not be related to the parties and subject matter covered by the Amended Complaint. In fact, it appears highly unlikely that even a carefully crafted examination of G. Bennett by the Trustee could not avoid delving into issues regarding the other defendants and subject matter covered in the extensive Amended Complaint, and thus examination of the issues requested would not be "in addition to or beyond the scope" of the Trustee's pending adversary proceeding. *See Buick,* 174 B.R. at 306. It appears then that G. Bennett and the parties and subject matter of the Amended Complaint are not easily separable because of the complex relationship between them, and the Court recognizes that use of a Fed.R.Bankr.P. 2004 examination would unavoidably and unintentionally create a back door through which the Trustee could circumvent the limitations of Fed.R.Bankr.P. 7026 *et seq.,* which are properly applied in this instance.

Consideration of the facts and holding in *Drexel Burnham,* 123 B.R. at 702, and the decision in *In re Analytical Systems, Inc.,* 71 B.R. 408 (Bankr.N.D.Ga.1987), do not alter the opinion of the Court. This Court concludes that the district court opinion in *Blinder, Robinson,* and the subsequent bankruptcy court opinion in *Buick,* as well as the weight of other caselaw interpreting the scope of Fed.R.Bankr.P. 2004, are more precise descriptions of the procedure relating to such examinations.[4] The distinction between the use of a Fed.R.Bankr.P. 2004 examination by a creditor or by a trustee appears to be less important than the distinction drawn between examination of unrelated matters as opposed to related matters after an adversary proceeding has been filed. Thus it is more appropriate to focus on the relationship between the requesting party and the infor-

mation and parties the examination has targeted rather than simply basing access to a Fed.R.Bankr.P. 2004 examination on the type of party requesting the information. *See Blinder, Robinson,* 127 B.R. at 274–75 (indicating that creditor/trustee distinction is not proper).

Based upon the foregoing analysis, the Court finds that a Fed.R.Bankr.P. 2004 examination of G. Bennett according to the subpoena as drafted by the Trustee would necessarily involve issues and parties within the scope of the adversary proceeding already initiated by the Trustee, and therefore the Trustee is limited to discovery as to G. Bennett in accordance with the Fed.R.Bankr.P. 7026 *et seq.*

Based upon the forgoing it is

ORDERED that the motion of the third-party defendant G. Bennett, brought before this Court by Order to Show Cause requesting that the Trustee be barred from examining Gwen Bennett pursuant to Rule 2004 of the Fed.R.Bankr.P., be and hereby is GRANTED.

---

4. The Court is also not persuaded to alter its decision based on *In re Sun Medical Management, Inc.,* 104 B.R. 522 (Bankr.M.D.Ga.1989). While that court noted the doctrine that once adversary proceedings are initiated, Fed. R.Bankr.P. 2004 examinations are no longer appropriate, it nonetheless authorized Sun to conduct Fed.R.Bankr.P. 2004 examinations even though "an adversary proceeding has been filed with the Court that may involve the parties that

Sun wishes to examine,...." *Id.* at 524. It apparently allowed the examinations because answers to the adversary complaint were not yet due and because of a showing by Sun that fraud may have been involved in the case. *Id.* The *Sun* court does not, however, offer any authority to stray from the general rule based upon the timing of answers or based upon a general policy concern of possible fraud.