**In re ENRON CORP., et al., Debtors.**

**No. 01–16034 AJG.**

United States Bankruptcy Court, S.D. New York.

Aug. 15, 2002.

*MEMORANDUM DECISION AND OR-
DER CONCERNING MOTIONS
FILED BY THE REGENTS OF
THE UNIVERSITY OF CALIFOR-
NIA TO OBTAIN COPIES OF
DOCUMENTS PRODUCED BY
VARIOUS PARTIES THAT ARE
CONTAINED ON THE BANK-
RUPTCY RULE 2004 WEBSITE*

ARTHUR J. GONZALEZ, Bankruptcy Judge.

Before the Court are three separate motions filed by the Regents of the University of California (the "Regents"), as Lead Plaintiff in the Newby Class Action (the "Newby Action"), requesting that this Court enter an order requiring the Official Committee of Unsecured Creditors ("Committee") to provide the Regents with access to certain documents produced by Arthur Andersen LLP ("Andersen"), Vinson & Elkins LLP ("V & E"), and McKinsey & Company ("McKinsey") (collectively, the "Objectants"). The Objectants have requested that the Regents' motions be denied. Pursuant to an order of this Court dated March 15, 2002 (the "March 15th Order"), the documents that the Regents have requested are located on a website that was created to, among other things, store and provide access to materials received by the Committee in connection with the Committee's investigations of Enron Corp. and its affiliated debtors and debtors in possession (collectively, "Debtors") under Rule 2004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule"). As contemplated under the March 15th Order, the Court has treated the Regents' motions as a request for materials from the Objectants pursuant to Bankruptcy Rule 2004. This Court heard oral argument on July 11, 2002.

### I. Background To The Instant Controversy

#### A. The Regents and the Newby Action

The Regents was named as the Lead Plaintiff in the securities class actions pending in the United States District Court for the Southern District of Texas (Houston Division), known as the Newby Action (Harmon, J.). The Regents filed a consolidated complaint (the "Complaint") on behalf of persons who purchased Debtors' notes and stock, the Class Claimants, naming Andersen and V & E, among others, as defendants.

Except as expressly permitted by order of Judge Harmon, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), all discovery is stayed in the Newby Action pending a judicial determination on motions to dismiss that have

been filed in that case.[1] McKinsey is not a party to the Newby Action, however no party disputes that the automatic discovery stay of the PSLRA applies to McKinsey.[2]

On February 27, 2002, Judge Harmon entered a scheduling order governing, among other things, discovery in the Newby Action. In relevant part, Judge Harmon's scheduling order authorizes certain ERISA plaintiffs to obtain discovery materials that are not otherwise stayed in the Newby Action by the PSLRA. To this Court's knowledge, Judge Harmon has not authorized the Regents to obtain the discovery materials that the Regents have requested in the instant motion.[3]

### B. The Committee's Motions For Discovery Under Bankruptcy Rule 2004

On January 23, 2002, the Committee moved this Court pursuant to Bankruptcy Rule 2004 for an order allowing it to seek discovery from Andersen. On February 6th, the Committee served Andersen with a subpoena requesting material concerning the relationship between Andersen and Debtors. Subsequent thereto, the Committee and Andersen entered into a stipulation governing the production and use of certain confidential Andersen materials which was so ordered by the Court on May 17, 2002.

On February 7, 2002 and pursuant to Bankruptcy Rule 2004, the Committee moved this Court for an order allowing it to seek discovery from, among others, V & E and McKinsey. The Committee's motion was geared towards its investigation of Debtors's off-balance sheet assets and liabilities. On February 28, 2002, the Committee served V & E with a subpoena seeking a wide range of documents concerning Debtors' special purpose entities, related party transactions, financial statements, relationship with Andersen, and retention and use of V & E as counsel. Subsequent thereto, the Committee, Debtors, and V & E entered into a stipulation governing the production and use of confidential V & E materials. Beginning March 21, 2002, V & E has been producing, and continues to produce, documents responsive to the Committee's subpoena.

On February 28, 2002, the Committee served McKinsey with a subpoena requesting the production of a wide range of documents concerning the work performed by McKinsey in relation to or on behalf of Debtors. On April 2, 2002, McKinsey be-

---

1. The PSLRA includes a stay of all discovery upon the filing of a motion to dismiss. The PSLRA provides, in pertinent part, that:

   In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

   15 U.S.C. § 78u–4(b)(3)(B).

2. *See, e.g., In re Carnegie Int'l Corp. Sec. Litig.,* 107 F.Supp.2d 676, 679 (D.Md.2000) (concluding that the plain meaning of the statute requires that the protective stay provisions of the PSLRA apply to all discovery, including third parties).

3. Based on a motion filed by the Regents to modify the automatic stay under 11 U.S.C. § 362, this Court issued an order dated May 22, 2002 ("May 22nd Order") ordering Debtors to produce to the Regents copies of documents and transcripts developed in connection with various governmental investigations. The relief granted in the May 22nd Order was conditioned upon Judge Harmon authorizing relief under the PSLRA stay and subject to any attorney-client or work-product protections. The purpose of the Regents' motion requesting the relief embodied in the May 22nd Order, was to obtain discovery for the Newby Action. The Regents moved before Judge Harmon, as contemplated by the May 22nd Order, and the matter is currently pending.

gan producing documents responsive to the subpoena subject to the March 15th Order, and subject to a confidentiality agreement entered into between Debtors and the Committee.

## C. The Committee's Bankruptcy Rule 2004 Website

On March 15, 2002, this Court entered an order entitled, Order Regarding Access By Third Parties To Bankruptcy Rule 2004 Material Obtained By The Official Committee of Unsecured Creditors (previously defined as the "March 15th Order").[4] One of the purposes of the March 15th Order was to provide a mechanism for parties in interest with a legitimate need regarding the administration of the bankruptcy estate, to request access to discovery materials obtained by the Committee from investigating Debtors' affairs. These discovery materials can include documents, deposition transcripts, deposition exhibits, and deposition videotapes ("Rule 2004 Material"). To this end, the Committee was authorized in its reasonable discretion to choose a mechanism for providing access to the Rule 2004 Material by, among other methods, developing an electronically accessible document and transcript website. The Committee chose a website as the mechanism for delivering access to the Rule 2004 Material ("Website").

It is the Committee's responsibility to provide notice to parties in interest of the fact that the Committee has received Rule 2004 Material from the various entities that the Committee has sought and continues to seek discovery from under Bankruptcy Rule 2004 ("Producing Party"). In order for parties in interest in this bankruptcy case ("Requesting Party") to access

the Website, a Requesting Party must submit a request on a pre-printed form ("Request") outlining which materials are sought. The March 15th Order requires that the Request include the Requesting Party's representation and agreement that the Rule 2004 Material will be used for purposes consistent with Rule 2004(b).[5] Specifically, a Request

> shall include a representation and agreement by the Requesting Party that the Rule 2004 Material is sought and shall be used by the Requesting Party in connection with the investigation of claims that relate to the acts, conduct, or property or to the liabilities and financial condition of the Debtors, or to any matter which may affect the administration of the Debtors' estate.

March 15th Order at ¶ 4.

The Request is noticed to the Committee, Debtors and Producing Party. Unless a Producing Party objects within ten business days, the Committee has an affirmative obligation to provide access to the materials requested. If a Producing Party lodges a timely objection to a Request for 2004 Material, then the Committee is relieved of its obligation to provide access to the materials requested under the March 15th Order. Thereafter, unless the parties are able to work out any of their differences, the parties may seek judicial intervention.

Here, the Regents filed a Request for certain Rule 2004 Materials on the Website concerning the Objectants. Andersen, V & E, and McKinsey all filed objections. These objections precipitated the Regents' instant motions as contemplated by the March 15th Order.[6]

---

4. The Regents were involved in the negotiations that resulted in the March 15th Order.

5. Compare Fed. R. Bankr.P. 2004(b) to March 15th Order at ¶ 4.

6. The Regents' motions also assert that they

The question before the Court is whether Rule 2004 is an appropriate discovery device where the Objectants contend that the purpose of the Regents' Request is to bypass the PSLRA stay in the Newby Action. The March 15th Order requires that the materials sought shall be for purposes consistent with Bankruptcy Rule 2004, therefore, in deciding this issue, the Court will apply the standards for the use of that rule.

## II. Discussion

■■■ Bankruptcy Rule 2004(a) of the Federal Rules of Bankruptcy Procedure states, "[o]n motion of any party in interest, the court may order the examination of any entity." The scope of an examination permitted by Rule 2004 may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the bankruptcy estate. Fed. R. Bankr.P. 2004(b). As the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination, *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 258 B.R. 580, 587 (Bankr.S.D.N.Y.2001); *In re French*, 145 B.R. 991, 993 (Bankr.D.S.D. 1992), and in the proper context the Court may authorize the examination of third parties that possess knowledge of the debtor's acts, conduct, liabilities or financial condition which relate to the administration of the bankruptcy estate. *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr.N.D.N.Y.1996).

■■■ As a general proposition, Rule 2004 examinations are appropriate for re-

vealing the nature and extent of the bankruptcy estate, *see Bennett Funding*, 203 B.R. at 28, and for "discovering assets, examining transactions, and determining whether wrongdoing has occurred." *In re Strecker*, 251 B.R. 878, 882 (Bankr.D.Colo. 2000) (citing *In re Duratech Indus., Inc.*, 241 B.R. 283, 289 (E.D.N.Y.1999)). In this regard, courts have recognized that Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions. *E.g., In re GHR Energy Corp.*, 33 B.R. 451, 453 (Bankr.D.Mass.1983). However, "the availability of Rule 2004 as a discovery tool is not unlimited." *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.)*, 127 B.R. 267, 274 (D.Col.1991).

Courts have imposed limits on the use of Rule 2004 examinations where the purpose of the examination is to abuse or harass, *In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr.E.D.Wis.1984), or under the well recognized rule that once an adversary proceeding or contested matter is commenced, discovery should be pursued under the Federal Rules of Civil Procedure and not by Rule 2004. *Bennett Funding*, 203 B.R. at 28; *accord 2435 Plainfield Ave., Inc. v. Township of Scotch Plains (In re 2435 Plainfield Ave., Inc.)*, 223 B.R. 440, 455–56 (Bankr.D.N.J.1998) (collecting cases); *cf. In re Buick*, 174 B.R. 299, 306 (Bankr.D.Col.1994) (recognizing that this limitation does not apply to parties not affected by, and issues not raised in, pending adversary proceedings).

The basis for this latter proscription "lies in the distinction between the broad ... nature of the Rule 2004 exam and the

___

are requesting permission to attend depositions of the Objectants conducted by the Committee. At a hearing before this Court, the Regents suggested that the motions concerned only documents. (*See* July 11, 2002 Hr'g Tr. at 4–5 where the attorney for the Regents stated: "Essentially the Regents is asking for

access to documents that have been produced ... on the website"). To the extent that the Regents have requested relief not addressed by this Order, the Regents are directed to submit an appropriate motion to address any unresolved concerns.

more restrictive nature of discovery under [the Federal Rules of Civil Procedure]." *2435 Plainfield*, 223 B.R. at 456 (internal citations omitted); *see also In re Dinubilo*, 177 B.R. 932, 939–40 & n. 12 (E.D.Cal. 1993) (contrasting the substantive differences between Rule 2004 examinations and discovery under the Federal Rules); *In re Duratech Indus., Inc.*, 241 B.R. 291, 296 (Bankr.E.D.N.Y.) (characterizing the vigor and breadth of Rule 2004 exams as a "free-and-easy practice"), *aff'd*, 241 B.R. 283 (E.D.N.Y.1999). For example, under Rule 2004: "the witness has no right to be represented by counsel except at the discretion of the court; there is only a limited right to object to immaterial or improper questions; there is no general right to cross-examine witnesses; and no right to have issues defined beforehand." *Dinubilo*, 177 B.R. at 939–940.

Based on Rule 2004's substantive differences, courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure. *See 2435 Plainfield*, 223 B.R. at 456 (quoting Norton Bankruptcy Law & Practice for the proposition that "courts will usually not allow a 2004 exam where an adversary proceeding is pending, because the party requesting an examination is likely seeking to avoid the procedural safeguards of [the Federal Rules of Civil Procedure]"); *Bennett Funding*, 203 B.R. at 28 ("[C]ourts are wary of attempts to utilize Fed. R. Bankr.P. 2004 to avoid the restrictions of the Fed.R.Civ.P. in the context of adversary proceedings"); *In re Valley Forge Plaza Assocs.*, 109 B.R. 669, 675 (Bankr. E.D.Pa.1990) ("Many courts have expressed distaste for efforts of parties to utilize [Rule] 2004 examinations to circumvent the restrictions of the [Federal Rules of Civil Procedure] in the context of adversary proceedings or contested matters").

*Bennett Funding* illustrates this point. In *Bennett Funding*, the bankruptcy court rejected a trustee's contentions that a Rule 2004 exam of certain parties was appropriate where the chapter 11 trustee had initiated an adversary proceeding that named the Rule 2004 examinees, among others, as parties to the adversary proceeding. In response to an order to show cause why the trustee should not be compelled to use the Federal Rules of Civil Procedure instead of Rule 2004, the trustee argued, *inter alia*, that the Rule 2004 exam at issue was not related to the matters plead or otherwise raised in the adversary proceeding, thereby rendering the proposed examination proper. Despite the trustee's representations to the bankruptcy court that no matter raised in the pending adversary proceeding would be addressed at the Rule 2004 examination, the bankruptcy court ordered that the trustee was limited to the discovery rules under the Federal Rules of Civil Procedure.

The court found that the trustee's adversary complaint alleged that the defendants created a "financial superweb." The court determined that it would be difficult, if not impossible, to differentiate whether and to what extent information obtained from a Rule 2004 examination would not be related to the parties and subject matter of the adversary proceeding. *Bennett Funding*, 203 B.R. at 29–30. The court reasoned that even the most finely crafted Rule 2004 examination could not avoid delving into issues that would be raised in the adversary proceeding and therefore the trustee could not comply with recognized exceptions to the use of Rule 2004. *Id.* at 30 (citing *In re Buick*, 174 B.R. at 306) (*see* parenthetical explanation *supra*). The court further found that it appeared that the parties and subject matter of the Rule 2004 exam would be inseparable from the adversary proceeding because of the complex relationship between the parties,

thereby creating an unavoidable and unintentional back door through which the trustee could avoid using the Federal Rules of Civil Procedure by using Rule 2004. *Id.* Based on this analysis, the bankruptcy court concluded that the trustee was limited to the discovery devices found under the Federal Rules of Civil Procedure.

Courts have exhibited similar concerns and reached similar results when confronted with the propriety of Rule 2004 examinations where the party requesting the Rule 2004 examination could benefit their pending litigation outside of the bankruptcy court against the proposed Rule 2004 examinee. *See Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D.Tex.1994), *aff'd sub nom. In re Snyder*, 52 F.3d 1067 (5th Cir.1995) (mem.) (characterizing the use of Rule 2004 to further a state court action as an abuse of Rule 2004 and stating that the bankruptcy court did not abuse its discretion by denying production under a subpoena issued under Rule 2004, where appellant's primary motivation was to use those materials in a state court action against the examinee); *see also Collins v. Polk*, 115 F.R.D. 326, 328–29 (M.D.La. 1987) (granting motion to impound all depositions taken pursuant to Rule 2004 and strongly condemning practice where plaintiff in district court action had filed suit but did not serve the pleadings, including an amended complaint, on Rule 2004 examinee/defendants until after having participated in bankruptcy trustee's Rule 2004 examinations); *cf. In re Coffee Cupboard, Inc.*, 128 B.R. 509, 515–517 (Bankr. E.D.N.Y.1991) (balancing the individualized elements of the case to conclude that limited discovery under Rule 2004 was warranted, but only to the extent relevant to the transfer of assets within the trustee's administrative power. The court recognized the normative principle that "Rule 2004 examinations should not be used to obtain information for use in an unrelated case or proceeding pending before another tribunal").

■ Applied here, the Court agrees with this line of authority and finds this reasoning applicable where, as here, the Regents—despite their statements to the contrary—are seeking to use Rule 2004 for discovery in the Newby Action. The Regents' motions are devoid of any invocation of what matters it seeks under Rule 2004(b) and the nexus of those materials to the Regents as a party in interest in this bankruptcy case. Instead, the Regents' motions rely entirely on the purported propriety of the information it seeks from the Objectants as it relates to Judge Harmon's scheduling order in the Newby Action. Hence, the Court finds that the Regents' requests in the instant motions do not fall within the confines of Rule 2004(b) and that the instant motions are not otherwise connected to the Regents as a party in interest in this case. Despite the breadth of Bankruptcy Rule 2004, "it must *first* be determined that the examination is proper." *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr.D.Mass.1983) (emphasis in the original). The Regents have not satisfied this threshold inquiry because the Regents have not alleged, much less substantiated, that the Rule 2004 Material sought from the Objectants are properly discoverable in the context of a Bankruptcy Rule 2004 examination.

Although at oral argument the Regents suggest that the materials it seeks is related to its "bankruptcy agenda" and not the Newby Action, the timing of the Regents' explanation in response to the Objectants' arguments undermines the Regents' contentions thereby casting doubt on their motivations. According to the Regents, its bankruptcy agenda includes preparing a motion that directs the bankruptcy filings

of certain special purpose entities to bring them under the jurisdiction of this Court for the benefit of the bankruptcy estate. The Court does not question that the Regents may be preparing such a motion. However, the Court does not find it credible that the need for discovery regarding the preparation of that motion is the rationale for the instant Rule 2004 requests. Other than conjecture, the Regents (1) offer no evidence that the Committee, the Enron Corp. Examiner, and the Debtors (as fiduciaries) are incapable of insuring that to the extent such motion needed to be filed that any one or all the aforementioned would not take timely and appropriate action to maximize the estate's recoveries[7]; and (2) offer no justification how this effort would realistically inure to their (Regents') benefit.

First, the Court finds that the Regents are relying on the faulty premise that the Committee and Debtors are not pursuing these issues while awaiting the Enron Corp. Examiner's report. In support of their bankruptcy agenda argument, the Regents argued that the Enron Corp. Examiner's investigation is in its early stages and that the Committee and Debtors are likely waiting for the Enron Corp. Examiner's report before they would take any action similar to what is contemplated by the Regents regarding the special purpose entities. Because of this perceived inaction, the Regents contend that it is necessary for the Regents to conduct their Rule 2004 discovery now in order to enable the estate to take advantage of the Regents' "learning curve" and in so doing insure that timely action may be taken regarding any effort to direct the bankruptcy filings of any special purpose entities.

Both the Committee and the Debtors deny the Regents' assertion that they have not been pursuing these issues awaiting the completion of such report. The Court has been given no reason to disbelieve the Committee and the Debtors nor has the Court been convinced that the Regents' investigation into any special purpose entities is any more advanced than that of the Committee or the Debtors, or that the Regents possess any learning curve that would support the Regents' rationale for their Rule 2004 requests.

Second, the Court notes that the record of this case concerning the asset values that may be available for distribution to creditors and the estimates of the claims that may be filed against the estate, indicates that it is commonly expected that general unsecured claims in this case will not receive full payment on their allowed claims.[8] Because any recovery on claims

7. The fact that an investigation by a creditors' committee, debtor, examiner, or trustee is ongoing regarding the subject matter of a proposed Rule 2004 examination does not preclude the use of Rule 2004 by a party in interest. However, an ongoing investigation is a factor to be considered when there are other clear indications that the motivation for the request is not for the purpose of investigating matters which may affect the administration of the bankruptcy estate, but to advance the non-bankruptcy agenda of the applicant.

8. Although the Debtors' Bankruptcy Schedules and Statements filed on June 17, 2002 ("Schedules") indicate that assets exceed liabilities, asset values are based upon "Net Book Value," which generally has not been a reliable indicator of amounts realized in this case. In addition, Debtors' liabilities listed in Debtors' Schedules exclude amounts that the Debtors list as "unknown." Further, according to the Debtors' 8–K filed post petition on February 12, 2002, Debtors believe that the total amount of liquidated, undisputed claims exceed and will exceed the current fair market value of the consolidated operations and assets of the Debtors. The assertions in the Debtors' 8–K are consistent with representations made to the Court concerning the Debtors' financial condition by the Debtors and various parties in interest, including the Com-

filed as a result of the Newby Action would likely be subject to a motion to subordinate such claims under 11 U.S.C. § 510(b), *a fortiori*, it is not expected that any securities-related claims would receive a distribution in this case. Although it is premature at this stage of the case to conclude with absolute certainty that any recovery in the Newby Action would be subordinated under § 510(b) or, if so, that recovery for a class of creditors subordinated to unsecured creditor class would not receive a distribution in this case, the Court must examine the Regents' request in the context of the current facts and circumstances surrounding the request with all reasonable inferences to be drawn therefrom.

Considering the aforementioned, whatever value that would be recovered by including any of Debtors' entities into the bankruptcy case is not likely to benefit any claim filed in this case resulting from the Newby Action. Furthermore, even if any claim resulting from the Newby Action were not subordinated under § 510(b) and were therefore part of the unsecured creditor class, the investigations being conducted by the Enron Corp. Examiner and the Committee fully address any reasonable concern one may have that all efforts will be undertaken to obtain maximum value for the assets of this estate. Thus, based on the foregoing, the Court finds no basis upon which the Regents would request the Rule 2004 Material at the present time unless there was some other purpose motivating the request. It follows therefrom that the only reasonable conclusion that can be drawn is that discovery is sought solely for purposes of the Newby Action. Hence, the Court finds that the Regent's

justifications for the relief sought is nothing more than a pretext for discovery in the Newby Action.

In conclusion, based upon the Regents' submissions as filed, the context of the Regents' justifications for the requested relief, and the plausibility of those justifications under the circumstances of this case, the Court finds that the Regents' are attempting to employ Rule 2004 for discovery in the Newby Action and not for the purpose of asserting their rights as a party in interest in this bankruptcy case. In this regard, the Regents' request for discovery is unlike those cases where Rule 2004 has been utilized by creditors to examine third parties for the purpose of investigating matters which may affect the administration of the bankruptcy estate. Consequently, based on the record before this Court, the Court will exercise its discretion under Rule 2004(a) to deny the Regents' motions.

Based on the foregoing, it is hereby

ORDERED, that the Regents' motion requesting that this Court enter an Order directing the Committee to assign the Regents a password to obtain all documents produced by Andersen posted on the Website is denied; and it is further

ORDERED, that the Regents' motion requesting that this Court enter an Order directing the Committee to assign the Regents a password to obtain all documents produced by McKinsey posted on the Website is denied; and it is further

ORDERED, that the Regents' motion requesting that this Court enter an Order directing the Committee to assign the Regents a password to obtain all documents

mittee and individual creditors from various Debtor entities. Considering the aforementioned, even if certain unsecured claims of some of the financial institutions were equitably subordinated under § 510(c), there is no

reasonable expectation at this time that the Regents would ultimately receive a distribution in this case based upon any claim (arising out of the Newby Action) that they may have.

produced by V & E posted on the Website is denied.