**In re DURATECH INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 897–89553–288.**

United States Bankruptcy Court, E.D. New York.

April 8, 1999.

AMENDED MEMORANDUM OPINION AND ORDER FOR CASE ABSTENTION UNDER 11 U.S.C. § 305 AND ORDER DENYING APPLICATION OF NU–CHEM LABS, INC. FOR RULE 2004 EXAMINATION AND DOCUMENT DISCOVERY OF CHAPTER 11 DEBTOR IN POSSESSION

STAN BERNSTEIN, Bankruptcy Judge.

Issues:

On February 11, 1999, Nu–Chem Labs, Inc., (Nu–Chem)[1] filed an application for an order authorizing it to take an examination of Debtor and Debtor–in–Possession Duratech Industries, Inc. (Duratech) under Fed. R. Bankr.P.2004, along with demands for broad document production, concerning Duratech's assets, business operations, etc. (Application) That Application was opposed by Duratech. A hearing on this contested motion was held on March 11, 1999. The Court read all of the pleadings, the extensive exhibits, and the prior dockets entries before the hearing and engaged in an extensive colloquy with counsel for Nu–Chem at the hearing on the record. At the conclusion of the hearing, the Court determined that Nu–Chem's application for a Rule 2004 order should be denied without prejudice.

Bruce Zebarauskas, Meltzer, Lippe, Goldstein, Wolf & Schlissel, P.C., Mineola, NY, Nu–Chem Labs, Inc.

Howard J. Wunderlich, East Islip, NY, for Debtor.

1. The homonymic "nuke-em" captures Nu–Chem's litigation approach. In this respect, the ruling to abstain seeks to impose a temporary truce in this theater of the litigation campaign.

2. 11 U.S.C. § 102(1)(A): In this title, "after notice and a hearing", or similar phrase— means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances ... This has been

In addition, on its own oral sua sponte motion, the Court determined at the March 11, 1999 hearing that it should abstain from (or suspend) any further administration of this dormant chapter 11 case under 11 U.S.C. §§ 102(1)(A),[2]

construed fairly consistently by bankruptcy judges to authorize the entry of orders with respect to sua sponte motions without prior notice and hearing when there is substantial justification for doing so under the particular facts and circumstances of a case as articulated on the record. In this particular case, as explained below, the Court had closely monitored its status, understood quite clearly that no meaningful plan could be acted upon until the litigation in the District Court was settled or tried, and that perception was further un-

105(d) [3] and 305(a)(1) [4] until the various substantive matters between Nu–Chem and Duratech pending before U.S. Magistrate Judge E. Thomas Boyle and U.S. District Judge Joanne Seybert are determined. Counsel for Nu–Chem orally moved that the record be "so ordered." The Court immediately granted that motion, subject to supplementing the record with a memorandum opinion. Nu–Chem filed its notice of appeal of the so ordered rulings. The notice of appeal may more properly be characterized as a request for leave to appeal since neither the Rule 2004 order nor the order of abstention is a final order or judgment of this Court.

### Background

#### A. Litigation before the District Court

This memorandum explains the basis for the dual rulings of March 11, 1999. The District Court has been actively involved for many months in the pending civil actions and/or contested matters among Nu–Chem and other parties in *Nu–Chem Laboratories v. Dynamic Laboratories, Inc., et al.*, 96–CV–6886 (JS) in which Duratech has been permitted to intervene, together with the withdrawal of the reference of Duratech's objections to the claims of Nu–Chem and its officers which were filed in this chapter 11 case. Therefore, this Court does not need to delve into any considerable detail concerning those matters between Nu–Chem and Duratech that have been heard or will be heard by District Judge Joanne Seybert and upon assignment for certain matters to Magistrate Judge E. Thomas Boyle.

At this stage, Judge Seybert presides in three separate judicial capacities with respect to these matters: (i) as the trial judge in a civil action filed in the District Court, (ii) as a bankruptcy judge upon the withdrawal of the reference of contested matters filed initially in the Bankruptcy Court, and (iii) as the appellate judge of appeals from orders or judgments of the Bankruptcy Court. These three discrete roles arise under the jurisdiction and procedural provisions of the Bankruptcy Reform Act of 1978, as amended. [5]

Indeed, the Nu–Chem litigation pending before the District Court has proceeded fairly far down the road toward a full determination on the merits as evidenced by that court's granting a preliminary injunction to Duratech against Nu–Chem, its

derscored by District Judge Seybert's adoption of Magistrate Judge Boyle's Report and Recommendation of March 1, 1999 to withdraw the reference concerning the debtor's objections to Nu–Chem's and its officers' respective and separate, but identical, $3,000,-000 claims. There was nothing that a creditor could have raised in a separately noticed hearing under section 305 that would have dissuaded this Court from suspending further proceedings in this case until the foregoing litigation before the District Court had been resolved. Actual prior notice and hearing under section 305 would have simply added unnecessary delay and further administrative expenses to this estate. Moreover, the debtor supported this interim suspension of the chapter 11 case.

**3.** 11 U.S.C. § 105(d): "The court, on its own motion or on the request of a party in interest, may-

(1) hold a status conference regarding any case or proceeding under this title after notice to the parties in interest; and

(2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically ...

**4.** 11 U.S.C. § 305(a)(1): "The court, after notice and hearing, may ... suspend all proceedings in a case in a case under this title at any time if (1) the interests of creditors and the debtor would be better served by such ... suspension."

**5.** The proliferation of roles for the district court in bankruptcy cases underscores the point that a chapter 11 debtor often has to run a Marathon race to save its business. See *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) and 28 U.S.C. § 1334 district court jurisdiction over bankruptcy cases, and 157(d)(withdrawal of the reference to the district court) and 158(appeals to the district court).

officers, directors, agents, servants and employees, et al. on May 19, 1998 (the Duratech Injunction). The issuance of the Duratech Injunction was predicated, in part, on a finding of fact that Nu–Chem had already caused Duratech irreparable injury based upon the former's theft of the latter's proprietary information, customers lists, equipment, and the like. That injury has already caused Duratech a loss of 90% of its sales, which, the District Court found, forced Duratech to file for relief under chapter 11 of the Bankruptcy Code.

The terms of the Duratech Injunction included, in relevant part, the following prohibitions:

(2) utilizing any Duratech customer list, purchase history invoices, or other property or equipment stolen from Duratech (subject to exceptions not relevant to this opinion);

(3) infringing upon Duratech's trade secrets or other intellectual property rights;

(4) otherwise causing any unlawful loss and harm to the business or goodwill of Duratech;

(5) destroying or removing ... any records or documents relating to Duratech's business; and

(6) acting or omitting to act to create confusion in the marketplace between Duratech and Nu–Chem or between any Duratech product(s) and any products of Nu–Chem in violation of section 43(a) of the Lanham Act.

**B.   The Chapter 11 Case and Contested Matters before the Bankruptcy Court**

Duratech filed its chapter 11 petition commencing this case on December 17, 1997. This Court has been presiding over the administration of the Chapter 11 case since its inception. From the very first case management or status conference held in this case on February 5, 1998, counsel for Duratech pointed out that his client's ability to reorganize was contingent upon its successful prosecution of civil claims against Nu–Chem for damages based upon the latter's business torts and, for additional recoveries, against its former insurance carriers with respect to coverage for repeated thefts of its inventory and equipment.

By way of background for the District Court, an initial case management or status conference is customarily held by this Court in every chapter 11 case within the first sixty days of its commencement under 11 U.S.C. § 105(d). The status conferences are continued for hearing every thirty to ninety days thereafter depending upon the complexity of the particular case. Further brief status conferences to monitor progress in this case were held on March 12, 1998, May 7, 1998, June 18, 1998, July 30, 1998, August 27, 1998, January 21, 1999, and March 11, 1999. The Court maintains a running commentary on each case in its chambers computerized records, with descriptive entries made following every significant event or status conference.

On February 13, 1998, Nu–Chem and its principal officers, Messrs. Daryl Squicciarini and Joseph Ialacci filed proofs of identical unliquidated and contingent claims of $3,000,000 each in the Duratech estate for alleged trade libel and related business torts. On April 6, 1998, Duratech filed objections to these contingent claims, and then moved to have the reference withdrawn to the District Court on the ground that the determination of these claims in Duratech's chapter 11 case were, in essence, counter-claims to the action pending before the District Court (the withdrawal motion). Duratech's motion for withdrawal of the reference was heard by Magistrate Judge Boyle who filed his Report and Recommendation, *Nu–Chem Laboratories, Inc. v. Dynamic Laboratories, et al.,* 96–CV–6886 (JS) on March 1, 1999, and the recommendation was to grant that motion. The ten day period for filing objections to this Report may have run on or immediately after the date of the March 11, 1999 hearing before this Court. There-

after, District Judge Seybert adopted the Report and Recommendation.

On April 6, 1998, the same day Duratech filed objections to the Nu–Chem and its officers' $3,000,000 claims, Duratech's counsel moved for an extension of its exclusive statutory right to file and confirm a plan of reorganization. Following a status report on the chapter 11 debtor's pending litigation, the Court denied the motion at a hearing held on May 7, 1998. Since no official creditors' committee had been appointed and no other significant matters were pending before this Court, it did not appear that sufficient cause had been shown to extend the debtor's exclusive right to file a plan. Nor did it appear to the Court that any other party in interest would be in a position to propose a plan in good faith that could be confirmed for this business given the contingency of the litigation outcomes in other courts. (11 U.S.C. § 1129(a)(3) conditions the confirmation of any plan of reorganization that it be proposed in good faith and not by any means forbidden by law.)

At the conclusion of the status conference held on January 21, 1999, the Court directed Duratech to submit a report on those litigations so that the Court and the United States trustee could monitor the status of the litigation pending before other courts. That report was filed on February 2, 1999. It is clear that all of these litigation matters are not ready for disposition on their respective merits at this time.

The denial of Duratech's motion to extend exclusivity created an opportunity for any other creditor or party in interest to file plan of reorganization and accompanying disclosure statement. Nu–Chem tried to take advantage of this opportunity by filing its application for a Rule 2004 order. The alleged justification for the Rule 2004 Order was that Nu–Chem intended to propose a plan of reorganization, and it needed access to the business records and inspection and appraisal of Duratech's property in order to prepare a plan and

disclosure statement. One of the formal conditions for confirmation, namely, 11 U.S.C. § 1129(a)(7) is that plan propose more to the unsecured creditors then they would receive were the assets of the debtor liquidated in a chapter 7 case. This sets the baseline against which the distribution to unsecured creditors is measured, and it is informally referred to as the best-interest-of-creditors test. A plan can not be in the best interest of creditors if they would receive more in liquidation than through the proposed plan. So in order to determine the baseline distribution, Nu–Chem, as a potential plan proponent, claimed it had to be in a position to value the debtor's assets. In addition, if a plan proponent were contemplating a "bootstrap reorganization," one in which the plan distributions would be funded from the debtor's post-confirmation cash flow, the plan proponent would presumably have to be in a position to project those cash flows based upon a close review of the debtor's books and records, including its customer lists, back-orders, and pricing practices.

Nu–Chem's bankruptcy counsel also understood that without an allowable claim, its counsel might be turned away at the gate to the ball-park because Nu–Chem's did not hold a ticket of admission. Nu–Chem's contingent unliquidated claim of $3,000,000 had already been objected to, and the determination of that contested matter was likely to be made by the District Court. Nu–Chem's bankruptcy counsel was sufficiently experienced in chapter 11 cases to predict that this Court would not be "comfortable" with a plan filed by an entity whose contingent claim was soon to be before the District Court. So in a rather mechanical fashion, Nu–Chem negotiated to buy (or take by assignment) an allowed claim of an unsecured creditor of the Duratech estate in the amount of $1180 for $500. By holding this nominal claim, Nu–Chem convinced itself that it was now entitled to at least a seat in the bleachers behind a pole, so it can assert that it has

standing interest as a creditor to file a plan. Duratech took the adverse position that the claim should be "equitably subordinated" under 11 U.S.C. § 510(c), the equivalent of ejecting Nu–Chem from the ball-park. That request for subordination was not addressed at the hearing.

While at the Uniondale Courthouse Magistrate Judge Boyle was apparently in the process of completing his report and recommendation to District Judge Seybert on the motion to withdraw the reference concerning the objected-to claims of Nu–Chem and its affiliates, Nu–Chem drove a few miles farther east to file its Application for a Rule 2004 Order in the Westbury Courthouse on February 11, 1999. By virtue of this nasty form of parallel play, Nu–Chem's counter-offensive burdened this Court with having to review mounds of research materials, as it were, published by Magistrate Judge Boyle and District Judge Seybert in their account of a "tortured tale of thievery" [Memorandum and Order of the District Court, *Nu–Chem Laboratories, Inc. v. Dynamic Laboratories*, et al., 96–CV–6886 (JS), May 19, 1998, p. 7] in which Nu–Chem and its principals laid waste to Duratech's once booming business.

The core (and non-core) of this bankruptcy case is now before the Magistrate/District Court, and until those various litigation matters and any appeals of interlocutory or final appeals have been finally determined in that forum, there is no justification for this Court to administer this dormant chapter 11. The success or failure of Duratech's chapter 11 case wholly depends upon the outcome of the pending litigation before the Magistrate/District/Appeals Court. It is, therefore, in the interest of both creditors and the debtor for this Court to suspend any further proceedings in this case in order to conserve the modest resources of its estate.

## Discussion

C. The Application for a Rule 2004 Order.

■ Unlike the more orderly and self-contained pre-trial discovery rules under the Federal Rules of Civil Procedure, the opportunity and scope of discovery under Rule 2004 of the Federal Rules of Bankruptcy Procedure is far broader with respect to the central purpose of a bankruptcy case, namely, to maximize the distribution of assets or plan payments to unsecured creditors. That delimited statutory end presumably justifies the open-ended means of discovery under Rule 2004. Without any compunction or embarrassment, bankruptcy lawyers and judges readily acknowledge that Rule 2004 examinations often turn into fishing expeditions, especially in the hands of zealous chapter 7 trustees who are often portrayed as grappling in the dark for concealed assets or avoidable transfers. Even then, the Court has to rein in the trustees or bona fide creditors in chapter 7 cases from engaging in oppressive and over-reaching discovery.

■ However vigorous and broad discovery may be under a Rule 2004 examination, there are well-established limits even to this free-and-easy practice. The case law is replete with holdings that resort to Rule 2004 cannot include discovery conducted in bad faith or for improper purposes. *See, e.g., In re Mittco, Inc.,* 44 B.R. 35, 36 (Bankr.E.D.Wis.1984) and *In re Table Talk, Inc.,* 51 B.R. 143, 145, cited with approval in *In re Bakalis,* 199 B.R. 443, 447 (Bankr.E.D.N.Y.1996); *see also passim* 9 Collier on Bankruptcy Ch.2004 (Examination) (15th rev. ed.1999).

■ When it comes to non-debtor plan proponents, however, especially when the *proponents are known competitors of the debtor,* then bankruptcy courts become far more attentive to the scope and, yes, motivation of the Rule 2004 applicant. While many chapter 11 cases, in fact, degenerate into free-for-alls over competing plans— witness the highly publicized chapter 11 cases like that of Marvel Entertainment in which hard-ball players like Ron Perlman and Carl Ichan duke it for control of a

publicly-held company, rarely do the bankruptcy judges in this district serve as umpires of those games.

■ Nu–Chem has engaged in a pretentious pretext for Nu–Chem's latest feint in its feckless forays to destroy the paltry remains of Duratech's business. In this case, Nu–Chem had the bravado [6] to assert that it intended to take control of Duratech's business under its proposed plan of reorganization. Any other rationale would, of course, be immediately suspect. In the rough and tumble world of chapter 11 reorganizations, there is no per se rule that prohibits hostile take-overs in the sacred name of paying unsecured creditors a little bit more than they would receive in liquidation. Nevertheless, there is still a threshold requirement that a plan be proposed in good faith and not by any means forbidden by law, as set forth at 11 U.S.C. § 1129(a)(3). There is the rub.

In this context, Nu–Chem had already conceded before the District Court that it stole 800 pages of business records of Duratech, including a list of virtually all of its then 400 customers, and also stole some of Duratech's valuable business equipment, and those party admissions were, in part, the predicate for the District Court's finding not only irreparable injury, but also the probability of Duratech's prevailing on the merits of its business tort litigation before the District Court.

For starters, if Nu–Chem's application were to be granted, it would be nothing more than a license to resume its theft of more of Duratech's customer records, pricing policies, and other confidential and proprietary trade information, and trigger contempt proceedings for violating the Duratech Injunction. In light of the findings of a sitting judge in District Court that Nu–Chem has stolen that information in the past, with Nu–Chem under a continuing preliminary injunction pending expedited discovery whose terms are quoted above, how can Nu–Chem and its very

experienced bankruptcy counsel for a moment think that this Court will subvert the clear purport and express terms of the Duratech Injunction?

This Court has no confidence whatsoever that any Rule 2004 Order can be crafted that will not inject this Court into the active and daily micro-management of sophisticated discovery controls to force continued full and faithful compliance with the Duratech Injunction. Nor frankly is the Court confident that Nu–Chem and its officers would faithfully respect the terms of any Rule 2004 Order this Court could frame after rounds and rounds of drafting and hearings on objections by both sides.

On independent grounds, Nu–Chem has failed to show cause for the granting of its Application. Nu–Chem's application is, this Court will concede, artfully drafted in its unduly subtle and refined distinctions between what it claims is fair game for discovery to draft a plan of reorganization and what looms in the background as the limits of the Duratech Injunction. In the vernacular of bankruptcy lawyers, this Application does not pass the "smell test." Quite to the contrary, this Application reeks with the foul odors of Nu–Chem's litigation excrescences. The point of the matter is that these overwrought distinctions will never work on the ground, and it appears to bother Nu–Chem (and its counsel) not one whit that litigation in this case, were this permitted to go forward, would be just another dozen or so arrows from its quiver shot at Duratech. This Court is simply too busy with meritorious cases filed by honest but unfortunate debtors to waste the lengthy hearings and drafting exercises time it would take to attempt to police this abuse of the bankruptcy process.

■ Furthermore, if Nu–Chem were truly committed to proposing a plan for the reorganization of Duratech, there is already enough information that is publicly available to drafting the plan and disclo-

---

6. Rough Spanish equivalent for chuzpah.

sure statement. The statutory standard for approval of a disclosure statement is that the disclosure statement must provide "adequate information" so that the creditors can decide whether or not to approve the proposed plan treatment of their respective claims. In plans of the sort of cases filed by privately held companies like Duratech, the distribution to unsecured creditors usually runs between 10% to 25% on the unsecured dollars. Only if Duratech succeeds in its litigation will the plan propose more than the customary dividend. Again in cases of this size (of assets and liabilities) in the lower middle market, there are no active creditors committees so only the United States trustee and the Court ever take any responsibility to determine the adequacy of the information in the disclosure statement and the feasibility of the plan. Not surprisingly, there is no creditors' committee in this case. Although the United States trustee solicited the twenty largest unsecured creditors in this case, no creditors expressed any desire to participate in the formation of that committee. This is evidenced by the Statement of the United States trustee of its inability to appoint a creditors' committee in this case filed with this Court on February 13, 1998.

The claims of Duratech's creditors have already been filed so their identity and amount, and claim of priority can be generated by reviewing the files of this case in the Clerk's office. Next, the debtor has filed its statements of assets and liabilities, so its assets are fully described in the requisite detail to prepare a disclosure statement. Any reasonably experienced creditor's counsel in consultation with an expert in the sale of used industrial equipment could generate an estimate of value for those assets sufficient for purposes of the disclosure statement. As for computing the baseline under 11 U.S.C. § 1129(a)(7), in almost all closely-held corporations, the best interest of creditors test is satisfied by offering to pay the unsecured creditors more than $1.00 because by the time the chapter 7 completes

the liquidation, all net proceeds of sale will be exhausted in paying for the costs of the superseding chapter 7 case. As for the cash flow projections to support a plan, assuming that a plan proponent did not simply offer a lump sum distribution to the class of unsecured creditors upon the effective date of the plan, following confirmation, the operating statements filed in this case provide reasonably sufficient basis for making those cash flow projections. In a word, Nu–Chem need no discovery or document production whatsoever to prepare its plan and disclosure statement. The Application for the Rule 2004 examination is nothing but a smoke screen blown at the Court to facilitate either a blatant violation of the Duratech Injunction or an end-run verging on off-sides of that Injunction.

Finally, since timing is everything in life and law, it bears pointing out that counsel for Nu–Chem first filed an appearance or a request for notices in this chapter 11 in February of 1998. It waited an entire twelve months before filing its Application for a Rule 2004 Order. If it were all that interested in filing a bona fide plan, one would have reasonably anticipated that Nu–Chem would have filed a plan and disclosure statement within a few weeks of this Court's ruling denying to extend Duratech's period of exclusivity. Nu–Chem's concern for the prejudice allegedly suffered by other creditors is mere posturing. Aside from Nu–Chem and its officers, the landlord, Marlmar Associates, is only the non-insider holding a large unsecured claim in the amount of $79,987. The landlord has not filed any motion to lift the automatic stay or to compel the debtor to assume or reject the lease. Clearly, creditors are not severely prejudiced by the chapter 11 process. The delay in having a disclosure statement approved and a plan confirms relates more to the pending litigation between Nu–Chem and the debtor in District Court.

Nu–Chem's application for a Rule 2004 exam and express intent to file a competing plan arose only after the District Court issued (i) the Duratech Injunction against Nu–Chem and its officers, et al., and (ii) Magistrate Boyle was about to issue his Report and Recommendation on the withdrawal of Duratech's objections to Nu–Chem's claims, was there this sudden interest in preparing a plan and disclosure statement. All that signifies, as noted above, is the resumption of fighting the litigation wars on at two fronts at the same time to destroy or take over Duratech. For these reasons, the Application is denied without prejudice to its refiling after the litigation matters pending before the District Court are either settled or disposed of on the merits in a final judgment.

D. Case Abstention.

■ Under 11 U.S.C. § 305, this Court has the discretion to abstain from or suspend the administration of any case filed under the Bankruptcy Code for cause. ("Abstention" and "suspension" are synonymous terms.) In comparable circumstances, this Court has entered orders of interim abstention or suspension permitted other chapter 11 debtors in possession to proceed with their claims in other courts provided that the debtors continue to comply with the operating guidelines of the United States trustee which include (i) filing of monthly operating statements, (ii) maintaining liability and property insurance, and (iii) paying all federal and state tax liabilities accruing after the petition date. In these cases, except for holding periodic status conferences at which the United States trustee regularly appears, there are generally few hearings on any contested matters or adversary proceedings pending the resolution of the debtor's civil litigation in other forums, so for all practical purposes, the Court abstains from administering the case until the debtor in possession is in a position to propose and then confirm a plan of reorganization. In other instances, the Court enters an order formally abstaining from further administration of the chapter 11 case under 11 U.S.C. § 305(a) when the chapter 11 case is at bottom a two-party dispute between the debtor and another party so that those parties may negotiate a structured dismissal of the case within a short period of time.

The Court did not enter a formal order of abstention under section 305 earlier in this case because not all of the litigation Duratech alluded to in its first status conference had been commenced. This Court decided to continue monitoring this case to a limited extent in order to track whether Duratech was granted the right to intervene in the civil action between Nu–Chem and Dynamic Labs, whether Duratech would prosecute its claims in other civil proceedings against its insurance companies, and what the course of those several suits would be taking. In exercising that discretion, this Court is guided by practical considerations. The debtor's operating reports continue to show a profit on a monthly basis so it should not be consuming its current assets to meet its ongoing post-petition administrative expenses; that implies that creditors will not be prejudiced by the continuing and justifiable delay in the debtor's proposing a feasible plan of reorganization but for the uncompensated opportunity costs in not being paid until distribution under a confirmed plan. If (and only if) Duratech succeeds in its pending litigation will it be able to make a significant distribution to its unsecured creditors, and it is, unfortunately, premature to predict its success in its litigation outcomes or in the collectibility of any judgments it may be awarded. But in view of the predicate findings to the Duratech Injunction, there is already enough of a litigation record to be reasonably confident of a successful outcome at least against Nu–Chem and its officers and the highly probable dismissal or severe discounting of the latter's counter-claims.

There is no legitimate point to be gained in having this Court engage in a more

active administration of this case pending the outcome of litigation before the District Court. In effect, all the "action" is going on before the District Court, and until those matters are decided, there can be no meaningfully informed role for this Court to play in moving the chapter 11 case along to confirmation, dismissal, or conversion. It surely makes little sense for this Court to be reviewing Reports and Recommendation from Magistrate Judge Boyle or the decisions from District Judge Seybert, and drawing the inferences appropriate for determinations by this Court. As a fifth wheel, this Court is likely to draw inappropriate inferences because it will not have had the benefit of presiding over evidentiary hearings in the civil action, of making assessments of the credibility of the key witnesses, of attending status conferences or settlement conferences within chambers or on the record, or of ultimately developing a "situation sense" through repeated exposure to the dynamics of the civil litigation among the real parties in interest.

■ Abstention by this Court in the meanwhile does not mean that the debtor in possession is relieved of its duty to continue to file monthly operating statements with this Court and the United States trustee, nor of its duty to comply with all of the other applicable provisions of the United States trustee's operating guidelines. At any time that the United States trustee becomes reasonably apprehensive that the debtor in possession is not fulfilling its duties under the guidelines or is incurring material and persisting operating losses, it may simultaneously move to modify or vacate this Order of case abstention and to file for whatever relief it deems appropriate under the Bankruptcy Code on notice to the debtor in possession and its counsel and to any other creditor or party in interest who has filed a request for notices under Fed. R. Bankr.P. 1009. By virtue of this order of case abstention, this Court will not take any further action with respect to perceived violations by Nu–Chem and its officers and its bankruptcy counsel under 28 U.S.C. § 1927 or 11 U.S.C. § 105 or Fed. R. Bankr.P. 9011; those matters shall be deemed reserved for later determination upon proper notice, motion and supporting affidavits or affirmations, and hearing if and when the Court vacates or modifies its order of case abstention.

To avoid any misunderstanding of the impact of this ruling of case abstention, that order became effective on the date of the March 11, 1999 hearing when Nu–Chem's counsel asked that it be so ordered on the record. Since the Court has determined to abstain from any further case administration under the terms of this Memorandum, that also has the intended effect of rendering Nu–Chem's Application for a Rule 2004 Order moot because this Court will not entertain any plans of reorganization nor review any disclosure statements, not preside over the terms and conditions of Rule 2004 discovery until further Order of this Court. This does not preclude any creditor or other party in interest from filing a plan and disclosure statement, but in order for any hearing to be held on these matters, the plan proponent must move for a modification of this Order and show cause for that modification. If, however, this Court's order of case abstention is overruled, then the District Court may then consider this Court's discussion of the separate and independent grounds for denying Nu–Chem's Application for a Rule 2004 Order.

So Ordered.