**In re INTERNATIONAL FIBERCOM, INC., an Arizona corporation, et al., Debtors.**

Nos. 02–02143–ECF–RJH to 02–02163–ECF–SSC.

United States Bankruptcy Court, D. Arizona.

Sept. 19, 2002.

Chad L. Schexnayder, Jennings, Haug & Cunningham, LLP, Phoenix, AZ, for Liberty Mutual Insurance Company.

Dale C. Schian, Schian Walker, P.L.C., Phoenix, AZ, for AT & T Corp.

Robert J. Miller, Bryan Cave LLP, Phoenix, AZ, for Debtor.

Daniel E. Garrison, Gallagher & Kennedy, Phoenix, AZ, for Official Committee of Unsecured Creditors.

## OPINION AND ORDER AUTHORIZING LIBERTY'S 2004 EXAMINATION OF AT & T

RANDOLPH J. HAINES, Bankruptcy Judge.

Liberty Mutual Insurance Co. ("Liberty") has moved for a Rule 2004 examination of American Telephone & Telegraph ("AT & T"). AT & T has opposed the motion on the ground that litigation is pending in other jurisdictions where such discovery would be more suitably made under Bankruptcy Rules 7026 through 7037.[1] Because that other litigation is presently stayed as a result of an automatic stay arising from the bankruptcy of another party in interest, this Court concludes that the pendency of such litigation is not sufficient reason to preclude discovery pursuant to Rule 2004 in this case.

### Parties

In 1999, AT & T and PF.Net Corp. ("PF.Net") entered into an agreement for PF.Net to build a nationwide fiber optic network for AT & T. The initial agreement encompassed the construction of 5,000 miles of the telecommunication network in California, South Carolina and North Carolina. Debtor in this case, International Fibercom, Inc., or one of its affiliates in these administratively consolidated cases (hereafter "IFCI"), was hired by PF.Net as a subcontractor for the construction of the fiber optic telecommunication system. Liberty provided payment and performance bonds for IFCI in connection with that subcontract, guaranteeing both IFCI's performance and its payment of its

sub-subcontractors. IFCI subsequently filed the bankruptcy petition commencing this case before it completed the construction required by its agreement with PF. Net. Liberty may have been called upon pursuant to its bonds to complete some of the construction, and may have been subrogated to IFCI's claims for payments due from PF.Net and/or AT & T on account of such bonded performance.

Legal proceedings are currently pending in California, North Carolina, South Carolina and New Jersey, arising out of the AT & T/PF.Net contract. Some or all of these may be in the nature of mechanics' lien foreclosure actions filed by PF.Net and/or some of its subcontractors. More recently, however, PF.Net filed its own bankruptcy case in New Jersey. Except for limited stay relief to permit perfection of mechanics' and materialman's lien claims, all of those legal proceedings are presently stayed as a result of the automatic stay arising from PF.Net's bankruptcy.

### AT & T's Opposition to 2004 Examination by Liberty

Liberty has sought broad discovery from AT & T in this case, relating to all aspects of the AT & T–PF.Net contract. It argues that such discovery is appropriate under Rule 2004 because Liberty seeks to learn about potential claims IFCI may have against either PF.Net or AT & T. Even though Liberty may be subrogated to any of IFCI's claims, they nonetheless constitute property of the Debtor, which is a proper subject for discovery under Rule 2004. The discovery would also be appropriate as to the Debtor's liabilities to PF. Net and AT & T, and as to the Debtor's defenses to such liabilities, which would

---

**1.** Except as otherwise noted, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330., and all rule references are to the Federal Rules of Bankruptcy Procedure.

also constitute defenses available to Liberty against any claims made on its bonds. But due to the automatic stay arising from PF.Net's bankruptcy, such discovery has been stayed in the pending litigation, and in any event Liberty believes it may discover some Debtor's claims that are not the subject of any pending litigation.

AT & T does not assert that the discovery sought is inappropriate or beyond the scope of Rule 2004, but rather argues that discovery under Rule 2004 is precluded by the existence of other pending litigation in which such discovery could be obtained. In other words, AT & T implied that if there were no adversary proceedings pending, Rule 2004 would be a suitable means for discovery in this factual circumstance. AT & T argues only that the scope of the Rule 2004 examination requested is too broad, encompassing both pre-contractual and post-contractual documents between AT & T and PF.Net, and that, in the case of a non-debtor, Rule 2004(c) and (e) requires conformity with Rule 9016 and consequently Fed.R.Civ.P. Rule 45.

### Analysis

■ Rule 2004(a) authorizes the court to "order the examination of any entity," and under Rule 2004(b) such examination may extend to "the acts, conduct, or property or to the liabilities and financial condition of the debtor . . . ."

As noted above, the discovery sought by Liberty from AT & T generally falls within that permissible scope. Yet although Rule 2004 does not contain any exception precluding such discovery when it is available in other pending litigation, courts have frequently imposed such a limitation, and it is that case law on which AT & T relies. Such case law, however, does not extend so far as to provide AT & T immunity from discovery in this bankruptcy case, under the unique facts present here.

■ First, it is not clear that all of the potential claims of the Debtor and Liberty are the subject of pending litigation. At oral argument, counsel for Liberty argued that the discovery sought is broader than that of the pending litigation and likely that there will be additional claims uncovered. This is precisely in line with the purpose of Rule 2004, "to allow the court to gain a clear picture of the condition and the whereabouts of the bankrupt's estate." *Moore v. Lang (In re Lang)*, 107 B.R. 130, 132 (Bankr.N.D.Ohio 1989)(citing *Cameron v. United States*, 231 U.S. 710, 34 S.Ct. 244, 58 L.Ed. 448 (1914)). Consequently when the Rule 2004 examination relates not to the pending adversary litigation, but to another matter, the "pending proceeding" rule does not apply. *In re M4 Enters., Inc.*, 190 B.R. 471, 475 (Bankr.N.D.Ga.1995); *see also In re Buick*, 174 B.R. 299, 305 (Bankr.D.Colo. 1994). Counsel for AT & T disputed Liberty's argument that the discovery sought is broader than any pending litigation, but has not convinced this Court that that is the case.

■ More importantly, however, the purpose of the "pending litigation" rule would not be served by precluding discovery here. The reason for the rule is to avoid Rule 2004 usurping the narrower rules for discovery in a pending adversary proceeding. *See, e.g., First Fin. Sav. Assoc. v. Kipp (In re Kipp)*, 86 B.R. 490 (Bankr.W.D.Tex.1988). (stating that once an adversary proceeding is initiated, a party to it "could no longer use Rule 2004 to obtain discovery relevant to the adversary"). However, the court holds the ultimate discretion whether to permit the use of Rule 2004, and courts have for various reasons done so despite the existence of other pending litigation. *In re M4 Enters., Inc.*, 190 B.R. 471 (Bankr.N.D.Ga.

1995); *In re Sun Med. Mgmt., Inc.,* 104 B.R. 522, 524 (Bankr.M.D.Ga.1989), (allowing Rule 2004 examination when there is possible fraud and quoting *In re Table Talk, Inc.,* 51 B.R. 143 at 145 (Bankr. D.Mass.1985), as stating, "Bankruptcy Rule 2004 examinations are allowed for the purpose of discovering assets and unearthing frauds").

Here, discovery is not presently available in any of the other pending litigation, due to the automatic stay arising from PF.Net's bankruptcy case. With one exception, it appears that discovery was in fact presently available in the other pending litigation in all of the authorities relied on by AT & T.[2] Consequently those authorities have limited, if any, significance for the situation where such alternative discovery methods are stayed, as here. On these facts, such strict application of the "pending litigation" analysis would be adverse to the purpose underlying the Bankruptcy Rule 2004. Liberty argues that it is at an "extreme information deficit" and a determination by the Court here that Rule 2004 is inappropriate would do nothing but perpetuate this problem. Liberty and the Debtor IFCI have joint interests in obtaining information that will at once serve to clarify outstanding issues of the complex relationship between the parties to the contracts in question, as well as potentially uncover additional claims that may exist for the benefit of the estate. This is undoubtedly why the official creditors' committee in this case joined in Liberty's request for such discovery.

AT & T's only authority in which discovery had been stayed is *In re Enron Corp.,* 281 B.R. 836 (Bankr.S.D.N.Y.2002). In *Enron,* however, the other discovery was stayed pursuant to a scheduling order, pending resolution of motions to dismiss. AT & T has pointed to no such specific determination made by any of the courts in which the other litigation is pending with respect to this case. More significantly, however, the *Enron* court denied the requested 2004 discovery because the proponents could not articulate any "nexus" between the requested materials and the proponents "as a party in interest in this bankruptcy case." *Id.* at 842. Consequently the court there denied the 2004 order not because of the other pending litigation, but because the proponents of the discovery "have not satisfied this threshold inquiry" that the discovery is proper under Rule 2004. *Id.*

Unlike the fortuitous purpose for which the use of Rule 2004 was proposed in *Enron,* Liberty here does not appear to be initiating the use of Rule 2004 to circumvent or overcome the more restrictive procedural rules in place for discovery in an adversary proceeding. Rather, Liberty has initiated the use of Rule 2004 for its proper purpose, to investigate matters that may affect the administration of the debtor's estate.

The Court also notes AT & T's argument that it should not be subjected to duplicative discovery. While an appropriate objection, it is more properly raised in the case where such arguably duplicative discovery is sought. So far as this Court is aware, this 2004 examination will be the first discovery to which AT & T has been compelled to respond; if subsequent discovery threatens to be duplicative, AT & T can raise this objection at that time.

**2.** *In re Dinubilo,* 177 B.R. 932, 941 (E.D.Cal. 1993); *In re French,* 145 B.R. 991, 992 (Bankr.D.S.D.1992); *Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.),* 127 B.R. 267, 274 (D.Colo.1991); *In re* *The Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr.N.D.N.Y.1996); *First Fin. Sav. Assoc. v. Kipp (In re Kipp),* 86 B.R. 490, 491 (Bankr.W.D.Tex.1988); *In re Sutera,* 141 B.R. 539, 541–542 (Bankr.D.Conn.1992).

Moreover, this potential burden may be alleviated by allowing Liberty to make its discovery responses available to the other parties in the other pending litigation (subject to any confidentiality agreements that may be appropriate). At oral argument Liberty's counsel agreed to serve in this capacity, and the Court also notes that a website facility was apparently utilized in the *Enron* case for a similar reason.

The Court contemplates that the requirements of Rule 2004, specifically Rule 2004(c) and (e), will be complied with, including but not limited to the incorporated requirements of Rule 9016 and Fed. R.Civ.P. Rule 45 with respect to issuance and service of subpoenas and the limitations on the place of examination.

**Conclusion.**

For the foregoing reasons, the discovery requested by Liberty of AT & T pursuant to Rule 2004 will be permitted.