**In re Philip C. CORSO and Debra J. Corso, Debtors.**

No. 04–CV–3628.
Bankruptcy No. 803–80239–511.

United States District Court, E.D. New York.

Aug. 8, 2005.

Weinberg, Gross & Pergament, LLP, by Marc A. Pergament, Esq., and Seth M. Choset, Esq., Of Counsel, Garden City, NY, for Appellee Marc A. Pergament.

McCabe, Weisberg & Conway, P.C., by Monica G. Christie, Esq., and Doron Zanani, Esq., Of Counsel, New York, NY, for Non–Party Creditor Beneficial homeowner Service Corporation.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This appeal arises from a July 8, 2004 Order by United States Bankruptcy Judge Melanie L. Cyganowski that denied a motion by Beneficial Homeowner Service Corporation ("Beneficial" or the "Appellant") to vacate a Judgment that was previously entered against it based on its failure to comply with a discovery subpoena and to compel Marc A. Pergament, the Chapter 7 Trustee ("Pergament" or the "Trustee" or the "Appellee") of Philip C. Corso and Debra J. Corso (the "Debtor"), to pay Beneficial's reasonable expenses to comply with the Subpoena. The July 8, 2004 Order also granted a cross motion by Pergament granting him leave to serve an amended subpoena on Beneficial which limited the scope of the requested documents.

## I. BACKGROUND

On January 14, 2003, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code and Pergament was appointed the Chapter 7 Trustee. During the first meeting of the creditors held pursuant to Section 341 of the Bankruptcy Code, Pergament discovered that the Debtor had participated in a refinancing transaction with Beneficial regarding the Debtor's residence located at 30 Patchogue Street, Patchogue, New York (the "Transaction"). Based on the information provided by the Debtor, Pergament learned that as part of the Transaction, despite there being no funds paid to the Debtor, the Debtor paid origination fees and discounts of 7.25% for the refinancing.

Upon his determination that additional information was necessary to ascertain whether Beneficial engaged in "predatory lending," the Trustee subsequently applied to the Bankruptcy Court pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure ("FRBP"), on notice to Beneficial, for authorization to compel Beneficial to produce certain documents and to conduct an oral examination of a representative of Beneficial. In support of this application, the Trustee indicated that he sought the following documents, among others:

1. All loan applications submitted to [Beneficial] or any related entity with respect to real properties in Nassau County or Suffolk County from January 1, 2002 through the present.

2. All loan files with respect to those loans identified in response to request Number 1.

3. All agreements between [Beneficial] and Bankers Life with respect to

real properties in Nassau County or Suffolk County from January 1, 2002 through the present.

4. All agreements or like documents between [Beneficial] and IRE Processing from January 1, 2002 through the present.

5. All correspondence between [Beneficial] and Phillip C. Corso and/or Debra J. Corso from January 1, 2000 through the present.

6. All documents evidencing loans given by [Beneficial] to Phillip C. Corso and/or Debra J. Corso from January 1, 1999 through the present.

Significantly, despite being on notice, Beneficial did not object to this application. On April 28, 2003, the Bankruptcy Court issued an order authorizing a FRBP 2004 examination of Beneficial (the "April 28, 2003 Order"). This order authorized the service of the Rule 2004 subpoena upon Beneficial by certified mail, and also waived the witness fee. In connection with this order, on April 29, 2003, the Trustee served a subpoena on Beneficial by certified mail and regular mail. The subpoena required Beneficial to produce certain documents on May 15, 2003 and appear for an oral examination on May 27, 2003 at Pergament's office. Beneficial failed to respond to the subpoena and did not file any objections or requests for protective orders with the Bankruptcy Court.

On May 19, 2003, the Trustee wrote to Beneficial via certified mail, enclosing another copy of the subpoena, and the April 28, 2003 Order. This letter also warned Beneficial that "[i]n the event that the requested documents are not delivered to me by May 22, 2003, I will pursue a contempt citation from the Bankruptcy Court due to your willful refusal to comply with the Order of the Bankruptcy Court." Beneficial did not respond to the Trustee's

letter and no representative of Beneficial appeared on May 27, 2003.

On May 30, 2003, on notice to Beneficial, the Trustee filed an application with the Bankruptcy Court requesting that the Bankruptcy Court issue an Order holding Beneficial in contempt for failing to comply with the subpoena. The Trustee also requested that the Bankruptcy Court award sanctions including attorney's fees and costs in the sum of $1,000.00. Beneficial did not respond to this application.

On June 18, 2003, the Bankruptcy Court entered an order holding Beneficial in contempt for its "willful refusal to comply with the subpoena" (the "Contempt Order"). In addition, the Contempt Order held that Beneficial "shall comply with the subpoena and produce the requested documents on or before June 27, 2003, and appear for a Rule 2004 Examination on or before July 15, 2003 . . . ." The Contempt Order further provided for the imposition of sanctions payable to the Trustee in the amount of $250.00 per day for each day of non-compliance with the Subpoena after June 27, 2003, in addition to $1,000.00 for attorney's fees and costs. Beneficial did not appeal from the Contempt Order.

On June 20, 2003, Pergament wrote to the Division General Manager of Beneficial via certified and regular mail, and provided him with a copy of the Contempt Order and an additional copy of the Subpoena. Thereafter, on June 30, 2003, the Trustee received a letter from Ofelia Shah of Beneficial containing only documents relating to the Debtor.

On July 8, 2003, the Trustee wrote to Beneficial again advising it of the requirements set forth in the Contempt Order and requested full compliance with that order. In response, a representative of Household Finance Corporation ("HFC"), the parent company of Beneficial, contacted the Trustee regarding compliance with

the Subpoena. On July 21, 2003, Pergament sent another copy of the April 28, 2003 Order and the Contempt Order to HFC. There was no response to this letter.

On August 25, 2003, on notice to Beneficial, the Trustee requested that the Bankruptcy Court enter a judgment based on the sanctions previously granted at the rate of $250.00 per day from June 27, 2003 through August 25, 2003, in addition to attorney's fees in the amount of $1,000.00 that was previously awarded. In support of this application, the Trustee submitted an affirmation detailing Beneficial's non-compliance with the subpoena and the Contempt Order.

On August 28, 2003, Doron Zanani, Esq., counsel for Beneficial, informed the Trustee that the subpoena required it to produce more than 2,500,000 pages at an estimated cost of $1.5 million. The Trustee indicated that he was willing to limit the scope of the subpoena to twenty-five random loan files, the examination of a representative from Beneficial, and a payment of $16,000 as required by the Judgment. On that same day, Mr. Zanani confirmed the substance of this conversation via facsimile. However, Beneficial did not consent to this request; did not file any papers with the Court stating that compliance with this subpoena would cause an undue burden; and failed to oppose the Trustee's request to enter the judgment.

On September 4, 2003, the Bankruptcy Court entered a judgment in the sum of $16,000.00 (the "Judgment") against Beneficial. There was no appeal from this Judgment. On or about December 8, 2003, Beneficial purportedly responded to items 3, 4, and 5 of the subpoena. In the accompanying letter, Beneficial advised the Trustee that the cost of compliance would be approximately $1.5 million and that Beneficial will only produce the requested documents once arrangement has been made for costs and expenses. However, as indicated by the Trustee's January 8, 2004 letter, the Trustee was dissatisfied with Beneficial's document production. The Trustee further emphasized that Beneficial failed to comply with the subpoena and the Contempt Order.

In a letter dated January 14, 2004, Beneficial indicated that it would not produce any documents in response to the Subpoena until the Trustee remitted the $2.8 million expense that Beneficial claimed it would incur to produce the documents. By letter dated March 9, 2004, Beneficial repeated its position that payment of this sum was a precondition to the production of the requested documents.

On April 6, 2004, Beneficial filed a motion with the Bankruptcy Court seeking various relief including: (1) to compel the Trustee to pay to it $2.8 million to cover the cost of document production; (2) to deem the Judgment satisfied when Beneficial's expenses exceeded all sums due on the Judgment; and (3) to stay execution on the Judgment. In the alternative, Beneficial requested that the Judgment be vacated as a sanction against the Trustee because he "issued a subpoena that imposed an undue burden or expense on Beneficial and he refused to pay Beneficial's costs and expenses for complying with the Subpoena in violation of FRCP 45(c)(1)." App. Brf. in Sup. 7. The Trustee cross-moved to compel Beneficial to satisfy the Judgment and to produce twenty-five (25) random files as requested during the August 28, 2003 conversation.

On June 23, 2004, the Bankruptcy Court held a hearing on the motions. During oral argument, Beneficial argued, that Pergament "as an attorney who has to comply with the Federal Rules, has no right to issue a subpoena which of this magnitude, to force us to comply, get a judgment and

then say he doesn't want it because he only wants 25 files out of the 80,000 files."

By Order dated July 8, 2004, the Bankruptcy Court ordered that:

(1) [Beneficial's] motion is denied in its entirety; (2) the cross-motion of the Trustee is granted in its entirety; (3) that the Trustee shall serve an amended subpoena upon Beneficial for the turnover of 25 random loan files subject to the provisions of a confidentiality order and these documents shall be delivered to the Trustee on or before July 23, 2004, and that the amended subpoena shall be deemed an amendment of the April 29, 2003 subpoena; (4) that Beneficial shall produce a witness on or before August 31, 2004, in compliance with the Rule 2004 amend ed subpoena to be served by the Trustee; (5) that Beneficial shall also produce a witness, if required concerning the selection of the 25 random loan files; and (6) that Beneficial may submit an application for reimbursement of costs with respect to its production of the documents in the 25 random loan files.

On August 23, 2004, Beneficial appealed from this Order, and presents the following issues on appeal:

1. Whether the Bankruptcy Court erred when it denied Beneficial's motion to vacate the Judgment as a sanction for Pergament's issuance of the subpoena that allegedly imposed on Beneficial an undue burden or expense and his refusal to pay any of Beneficial's expenses and costs for complying with the subpoena.

2. Whether the Bankruptcy Court erred when it denied Beneficial's motion to compel Pergament to pay Beneficial's reasonable expenses to comply with the subpoena and deem the judgment satisfied when those

expenses exceeded all sums due on the judgment.

3. Whether the Bankruptcy Court erred when it authorized Pergament to serve an amended subpoena that required Beneficial to produce only 25 files, and denied Beneficial's motion to vacate the Judgment that was based on Beneficial's alleged contempt for failing to timely comply with a subpoena that was no longer in effect.

On September 28, 2004, Beneficial brought an order to show cause in this Court for a stay of the September 4, 2003 judgment pending appeal. On October 18, 2004, the Court ruled that the Plaintiff is directed to produce 25 randomly selected files within 2 weeks from the date of that order. This Court further ordered that there was a stay of payment of the judgment pending appeal.

## II. DISCUSSION

### A. Applicable Law

 In bankruptcy appeals, the district court has jurisdiction to hear appeals "from final judgments, orders, and decrees" entered by the bankruptcy court. 28 U.S.C. § 158(a)(1). To be considered a "final order," an order of a bankruptcy court "need only dispose of discrete disputes within the case." *Cohen v. Doyaga*, No. 00 Civ.2090, 2001 WL 257828, at *2 (E.D.N.Y.2001) (citing *In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir. 1992)). Although there is some question as to whether discovery disputes in bankruptcy proceedings are "final orders," when, as here, the case involves a nonparty, a discovery order is considered a final order and is therefore appealable. *Cohen*, 2001 WL 257828, at *2. Such is the case because

the non-party's interest in resisting a discovery order is immediate and usually separate from the parties' interests in delay. Before final judgment is reached, the non-party either will have surrendered the materials sought or will have suffered incarceration or steadily mounting fines imposed to compel the discovery. If the discovery is held unwarranted on appeal only after the case is resolved, the non-party's injury may not be possible to repair.

*Id.* (internal quotation and citation omitted).

■ District court review of a Bankruptcy Court determination is governed by Rule 8013 of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr."). Under this rule questions of law are reviewed *de novo. In re AroChem Corp.,* 176 F.3d 610, 620 (2d Cir.1999); *see also In re Bennett Funding Group, Inc.,* 146 F.3d 136, 138 (2d Cir.1998). In addition, "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bkrptcy. P. 8013 (1991).

■ Because a decision to vacate a judgment is within the sound discretion of the bankruptcy court, such a ruling is reviewed under the abuse of discretion standard. *See In re Blaise,* 219 B.R. 946, 949–50 (2d Cir. BAP 1998) (citation omitted); *Altman v. Connally,* 456 F.2d 1114 (2d Cir.1972) (applying abuse of discretion standard to appeal from decision on motion to vacate or amend judgment). With respect to discovery sanctions, "a sanctioning court necessarily abuses its discretion when it 'base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.'" *Williams v. United States,* 215 B.R. 289, 299 (D.R.I. 1997) (quoting *Cooter & Gell v. Hartmarx*

*Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359 (1990)); *see also In re Blaise,* 219 B.R. at 949–50. "The 'clearly erroneous' test is not met unless the reviewing court, without reweighing the evidence, is left with the definite and firm conviction that a mistake has been committed." *Campbell ex rel. Campbell v. Metropolitan Property and Cas. Ins. Co.,* 239 F.3d 179, 186 (2d Cir.2001) (internal quotation marks and citations omitted).

## B. Issues on Appeal

1. **Whether the Bankruptcy Court erred when it denied Beneficial's motion to vacate the September 4, 2003 Judgment as a sanction for the Trustee's issuance of the subpoena that allegedly imposed on Beneficial an undue burden or expense and his refusal to pay any of Beneficial's expenses and costs for complying with the subpoena.**

■ In its motion dated April 6, 2004, Beneficial moved the Bankruptcy Court to vacate the Judgment entered against it on September 4, 2003 in the amount of $16,000. This motion was denied by the Bankruptcy Court primarily on the ground that Beneficial not only failed to respond and/or object to the subpoena, but ignored numerous court orders. In fact, during the oral argument held on this motion, Judge Cyganowski stated on the record:

Beneficial had the right to appear in Court and to respond to the request saying that it's over burdensome. They had the right to appear in Court, seek a protective order, oppose the relief sought by the Trustee. Beneficial did none of that.

. . .

I decline to vacate the judgment. I decline to sanction the Trustee. I see

absolutely no excuse offered by Beneficial to permit me to do what you are asking me to do. You concede that you never appeared, you concede that you defaulted, you ... failed to comply with the Federal Rules of Bankruptcy or Civil Procedure, with respect to the subpoena. So for all those reasons, I decline to grant equitable relief as to what you are seeking this Court to do.

For the reasons set forth below, the Court affirms this decision.

Although styled as a "Motion for a Protective Order," because the April 6, 2004 motion to the Bankruptcy Court sought to vacate the Judgment, this motion is properly analyzed pursuant to FRBP 9023.

■ In reviewing this appeal, the Court is mindful that motions to amend or vacate a judgment should not provide a forum to relitigate old issues that could have been raised in prior proceedings. *Air Espana v. O'Brien*, No. 95 Civ. 1650, 1997 WL 803756, at *5 (E.D.N.Y.1997) ("[W]hatever may be the purpose of Rule 59(e) it should not be supposed that it is intended to give an unhappy litigant one additional chance to sway the judge." (Internal quotation and citation omitted)); *Herschaft v. New York City Campaign Fin. Bd.*, 139 F.Supp.2d 282, 285–86 (E.D.N.Y.2001); *In re BNT Terminals, Inc.*, 125 B.R. 963, 977 (Bankr.N.D.Ill.1990) (The purpose of such a motion "is not to give the moving party another 'bite of the apple' by permitting the arguing of issues and procedures that could and should have been raised prior to judgment.").

As set forth below, the Bankruptcy Court acted well within its discretion by holding Beneficial in contempt for failing to respond to the subpoena. Beneficial's willful disregard of a court ordered subpoena and the Federal Rules of Bankruptcy Procedure is a proper ground for a finding of contempt and the award of appropriate sanctions.

### a. As to the Issuance of the Subpoena

■ FRBP 2004 allows the court, on motion of any party in interest, to order the examination of any entity if such examination relates "to the acts, conduct, or property or to the liabilities and financial condition of the debtor's estate...." Indeed, the scope of this examination is broader than discovery permitted under the Federal Rules of Civil Procedure. *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 708 (Bankr.S.D.N.Y.1991); *Matter of Wilcher*, 56 B.R. 428, 433 (Bankr.N.D.Ill.1985) (Rule 2004 is "very broad" in that discovery requests "can legitimately be in the nature of a 'fishing expedition.'"). The purpose of such a broad discovery tool is to assist the trustee in revealing the nature and extent of the estate; ascertaining assets; and discovering whether any wrongdoing has occurred. *In re Bennett Funding Group, Inc.*, 203 B.R. 24, 28 (Bankr.N.D.N.Y.1996). In addition, FRBP 2004 is used as a pre-litigation device to determine whether there are grounds to bring an action to determine a debtor's right to discharge a particular debt. *Id.*

To safeguard against abuses of discovery and/or to protect against an overbroad subpoena, the Federal Rules of Civil Procedure provide a level of protection for subpoenaed persons. In that regard, Rule 45(c), entitled "Protection for Persons Subject to Subpoenas," states in relevant part:

(c)(2)(B) ... a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the

subpoena written objection to inspection and copying of any or all of the designated materials or the premises.

(c)(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

. . .

(iv) subjects a person to undue burden.

Fed.R.Civ.P. 45(c)(2)(B), (c)(3)(A)(iv).

■■■■■ The fourteen day time limitation to serve written objections to a subpoena is crucial as failure to do so typically constitutes a waiver of such objections. *In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir.1998); *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48–49 (S.D.N.Y.1996) ("FRCP 45(c)(2)(B) requires the recipient of a subpoena to raise all objections at once and in a timely manner so that discovery does not become a 'game'."); *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950). The burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant. *United States v. International Bus. Machs. Corp.*, 83 F.R.D. 97, 104 (S.D.N.Y.1979).

■■■■ The Court notes that in certain circumstances and for good cause the failure to timely serve written objections will not bar consideration of the objections. *Semtek Int'l, Inc. v. Merkuriy Ltd.*, 1996 WL 238538, at *2 (N.D.N.Y.1996). Such circumstances may be found where: (1) the subpoena is overbroad on its face and exceeds the bounds of fair discovery; (2) the subpoenaed witness is a non-party acting in good faith; and (3) counsel for the witness and counsel for the party serving the subpoena were in contact concerning the witness' compliance prior to the time the witness challenged the legal basis for

the subpoena. *Semtek*, 1996 WL 238538, at *2; *Concord Boat*, 169 F.R.D. at 48–49.

In this case, upon a good faith determination that the refinancing transaction in question may be improper, the Trustee applied to the Bankruptcy Court for authorization to compel Beneficial to produce loan documents and to conduct an oral examination of a representative of Beneficial pursuant to FRBP 2004. The Trustee's application, which was submitted on notice to Beneficial, included a schedule of documents that would be sought. Significantly, Beneficial did not respond or object to the issuance of this subpoena. On April 28, 2003, the Bankruptcy Court granted the Trustee's application and a copy of this Order and the Subpoena were subsequently served on Beneficial by certified and regular mail. The record indicates that during the following months, the Trustee attempted to contact Beneficial on numerous occasions regarding the subpoena. In the Court's view, at every step the Trustee provided notice to Beneficial of the requests being made and he made every effort to initiate a dialogue regarding the contents of the subpoena. Again, these efforts were met with no response by Beneficial.

**b. As to Beneficial's failure to object to the Subpoena**

■■■■ Despite the strict time limitations and mechanism to properly object to a subpoena set forth in Fed.R.Civ.P. 45, Beneficial made absolutely no attempt to do so. Any assertions that Beneficial now makes that it did not have to respond to the subpoena because it was unduly burdensome, overbroad, and/or because Pergament never offered to pay any of Beneficial's expenses and costs for complying with the subpoena are totally untimely. Beneficial should have acted in accordance with Rule 45. Because Beneficial did not

raise any timely objections to the Trustee's subpoena, or move to quash it in a timely manner Beneficial waived its right to object to the Subpoena. *International Bus. Machs. Corp.*, 70 F.R.D. at 701–02 (finding a 68 day delay to respond to a subpoena untimely and constituted a waiver of the right to object).

 Further, even if the original subpoena was overbroad, the Court finds that there was no "good cause" reason to waive the Rule 45 requirements because Beneficial did not demonstrate that it acted in good faith. Not only did Beneficial ignore the subpoena and the various attempts by the Trustee to enforce the Subpoena, but it blatantly disregarded the application to the Bankruptcy Court requesting that it issue an order holding Beneficial in contempt for failing to comply with the subpoena. It was not until June 30, 2003, twelve days after entry of the Contempt Order and more than two months after the Trustee served the subpoena, that Beneficial first surfaced. In another act of willful disobedience, Beneficial failed to comply with the Contempt Order and did not make a formal motion to the Court until April 6, 2004, almost one year later.

#### c. The Imposition of Sanctions Was Proper

 Rule 45(e) of the Federal Rules of Civil Procedure provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." In a civil contempt proceeding, a finding of contempt will be upheld so long as the order violated "is clear and unambiguous, the proof of non-compliance [with the order] is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply." *United States v. Local 1804–1, Int'l Longshoremen's Assn.,*

44 F.3d 1091, 1096 (2d Cir.1995). In addition, before sanctions may be imposed on a person charged with civil contempt, due process requires that the person receive notice and an opportunity to be heard. *Schoenberg v. Shapolsky Publishers, Inc.,* 971 F.2d 926, 934–35 (2d Cir.1992), overruled in part on other grounds, *Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343 (2d Cir.2000).

The Court finds that all of the prerequisites of a finding of contempt and the imposition of sanctions have been met. Here, there was a service of a subpoena with clear and unambiguous provisions and absolutely no effort by Beneficial to comply. Even after the Trustee offered to limit the scope of the subpoena to twenty-five random loan files and an examination of a Beneficial representative, there was no effort by Beneficial to comply. Thus, the Contempt Order was properly entered by the Bankruptcy Court.

With respect to the Judgment, the Beneficial received notice and an opportunity to be heard prior to the entry of the judgment. On August 25, 2003, the Trustee requested that the Bankruptcy Court enter a judgment based on the sanctions previously granted at the rate of $250.00 per day from June 27, 2003 through August 25, 2003, in addition to the attorney's fees previously awarded in the amount of $1,000.00. In support of this application, the Trustee submitted an affirmation detailing Beneficial's non-compliance with the subpoena and Contempt Order. Even though on August 28, 2003, Doron Zanani, Esq., counsel for Beneficial, informed the Trustee that the subpoena required it to produce more than 2,500,000 pages at an estimated cost of $1.5 million, Beneficial did not file any opposition papers with the Bankruptcy Court. Also, Beneficial did not oppose the Trustee's request to enter the judgment.

Accordingly, the Bankruptcy Court's July 8, 2004 order which declined to vacate the entry of Judgment in the amount of $16,000, was well within the discretion of the Bankruptcy Court and there is be no basis to vacate or amend this judgment.

## 2. Whether the Bankruptcy Court erred when it denied Beneficial's motion to compel Pergament to pay Beneficial's reasonable expenses to comply with the original subpoena and deem the judgment satisfied when those expenses exceeded all sums due on the judgment.

With respect to Beneficial's appeal of that aspect of the July 8, 2004 Order that denied its motion to compel the Trustee to enforce the original Subpoena by paying $2.8 million to Beneficial and to sanction the Trustee for allegedly serving an overbroad subpoena, the Court finds that the Bankruptcy Court acted within its considered discretion. First, the scope of the original subpoena was approved by the Bankruptcy Court prior to it being served. Second, because Beneficial failed to respond to the subpoena or notify the Trustee of the estimated cost of complying, the Trustee did not know the magnitude of his request. Third, at the time of the April 6, 2004 motion, Beneficial had virtually no out of pocket expenses as there had been no attempt to comply with the subpoena. Finally, as this Court had already ordered that Beneficial produce 25 randomly selected files at a cost to be covered by the Trustee, there is no basis for the Trustee to pay $2.8 million to Beneficial.

With regard to Beneficial's argument that the subpoena did not include the text of Fed.R.Civ.P. 45(c) and (d), the Court notes that this argument was not raised until April 6, 2004, nearly one year after the original subpoena was issued. In the Court's view, in light of the circumstances of this case, namely Beneficial's willful disregard of the Trustee's communications and various orders of Bankruptcy Court, the failure to include the text of Fed.R.Civ.P. 45(c) and (d) does not warrant that the sanctions be vacated.

The Court also notes that in each of the cases that Beneficial relies on in support of its contention that sanctions were awarded for issuing subpoenas that were far less burdensome than the one at issue, such sanctions were prompted by a timely motion to quash the subpoena. *See, e.g., Williams v. City of Dallas*, 178 F.R.D. 103, (N.D.Tex.1998); *Polo Building Group v. Rakita (In re Shubov)*, 253 B.R. 540, 547 (9th Cir. BAP 2000). Here, no such motion was made. Accordingly, this aspect of the appeal is denied.

Finally, the Court will not consider Beneficial's contentions that it did not have to comply with the subpoena because of "defective service . . . on the branch office" as this argument was not raised before the Bankruptcy Court.

## 3. Whether the Bankruptcy Court erred when it authorized Pergament to serve an amended subpoena that required Beneficial to produce only 25 files, and denied Beneficial's motion to vacate the Judgment that was based on Beneficial's alleged contempt for failing to timely comply with a subpoena that was no longer in effect.

With regard to this final issue, the Court finds that Beneficial's argument that the Bankruptcy Court erred when it authorized Pergament to serve an amended subpoena that required Beneficial to produce only 25 files, but denied Beneficial's motion to vacate the Judgment that was based on Beneficial's alleged contempt for

failing to timely comply with a subpoena that was no longer in effect, is without merit. The fact that upon learning of the magnitude of the requested documents and the cost of complying with the subpoena, the Bankruptcy Court ordered that an amended subpoena be served is not relevant to the prior contemptuous conduct by Beneficial based on its willful disregard of the Federal Rules of Civil Procedure and numerous court orders.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the appeal by Beneficial of the Bankruptcy Court's Order denying its motion to vacate the September 4, 2003 Judgment is **DENIED;** and it is further

**ORDERED,** that the July 8, 2004 Order of the Bankruptcy Court is **AFFIRMED** in its entirety; it is further

**ORDERED,** that Beneficial is directed to satisfy the September 4, 2003 Judgment, in addition to post-judgment interest from that date, within thirty days from the date of service of a copy of this Memorandum of Decision and Order on its counsel by regular mail and certified mail return receipt requested; and it is further

**ORDERED,** that Beneficial is directed to comply with the amended subpoena; and it is further

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**